# EXHIBIT A

Service: **Get by LEXSEE®**
Citation: 2005 us dist lexis 9882
 Focus: **sur** (Exit FOCUS™)

*2005 U.S. Dist. LEXIS 9882, \**

PATRICIA VANDENBRAAK, et al., Plaintiffs, v. ANTHONY ALFIERI, et al., Defendants.

Civil Action No. 01-482 KAJ, Civil Action No. 01-492 KAJ CONSOLIDATED

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2005 U.S. Dist. LEXIS 9882

May 25, 2005, Decided

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, including an administratrix of the estate of the alleged victim, alleged medical malpractice against defendants, a cardiologist and a medical group. Before the court was defendants' motion in limine, seeking to prevent plaintiffs from introducing testimony at trial from one of the experts that defendants retained to testify in this matter but whom defendants had since determined that they would not call to the stand.

**OVERVIEW:** Defendants strongly objected to what they had said five months ago they had no objection to whatsoever, namely to any effort by plaintiffs to call the person as a witness. Examining defendants four arguments, the court first stated that there was nothing contrary to the spirit or letter of Fed. R. Civ. P. 26(a)(2)(B) in allowing an opposing party to use as substantive evidence an opinion propounded by the sponsoring party's expert, whether or not the latter had come to rue it. Second, defendants' argument that certain Delaware Superior Court procedural rulings bound the court to grant their motion was unfounded. However, the precedent cited by defendants was persuasive to the extent that it would indeed have been impractical and an unfair burden on the witness to require that he appear at trial in response to a subpoena. Third, the court stated that, Fed. R. Civ. P. 32 made no distinction between "discovery depositions" and "trial depositions." Thus, if defendants chose not to ask questions, they had to live with that choice. Finally, the balancing required by Fed. R. Evid. 403 did not favor exclusion of evidence of the fact that the witness was retained by defendants.

**OUTCOME:** Defendants' motion was granted to the extent that the trial subpoena served on the witness by plaintiffs would not be enforced; in all other respects the motion was denied.

**CORE TERMS:** deposition, pretrial, deposition testimony, doctor, subpoena, hired, discovery, pretrial conference, conf, Federal Rules of Evidence, expert testimony, right to call, state law, testifying, opposing, reserved, notice, expert witness, admissible, rebuttal, hearsay, substantive evidence, rules of evidence, exclude evidence, substantive law, defense expert, evidentiary, credibility, designated, balancing

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion 🖾
Civil Procedure > Trials > Motions In Limine 🖾

*HN1* Motions to admit or exclude evidence are entrusted to the sound discretion of the court. Of course, that discretion must be exercised within the context of an appropriate interpretation of the rule of evidence or procedure at issue. An appellate court reviews a ruling to admit or exclude evidence, if based on a permissible interpretation of the rules of evidence, for an abuse of discretion. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Mandatory Disclosures
*HN2* Fed. R. Civ. P. 26(a)(2)(B) is not intended to protect litigants from themselves. It is intended to protect opposing parties from unfair surprise and to allow such parties an opportunity to develop evidence to meet the expert testimony being proffered by the party that hired the expert. There is nothing contrary to the spirit or letter of Rule 26(a)(2)(B) in allowing an opposing party to use as substantive evidence an opinion propounded by the sponsoring party's expert, whether or not the latter has come to rue it. It would be an unwarranted twist on the Rule generally to allow the defendants to invoke Rule 26(a)(2)(B) to block evidence generated by their own expert. More Like This Headnote

Evidence > Procedural Considerations > Rulings on Evidence
Evidence > Witnesses > Expert Testimony
*HN3* Delaware Supreme Court precedent tends to demonstrate that unduly restricting a plaintiff's ability to rely on a defense expert's statements is reversible error. More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Application of State Law
*HN4* While it is true that the applicability of state law to diversity suits should ultimately depend not on the distinction between substance and procedure but on the policies underlying the Erie doctrine, those labels still bear meaning that can be of significant assistance in understanding how to approach the "federal law versus state law" issue in a particular context. A state court's interpretations of its rules of procedure ought not override the Federal Rules of Civil Procedure and the Federal Rules of Evidence when there is no clearly articulated state substantive law that is contravened by the application of the federal rules. The nub of the policy that underlies Erie is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result. More Like This Headnote

Civil Procedure > Trials > Subpoenas
Evidence > Witnesses > Expert Testimony
Legal Ethics > Client Relations > Attorney-Client Privilege
*HN5* Permitting a party to compel the testimony of an opposing party's expert witness may in some situations raise concerns involving the attorney-client privilege and involuntary servitude and ethical dilemmas for the subpoenaed expert. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Depositions at Trial
*HN6* See Fed. R. Civ. P. 32(a).

Civil Procedure > Disclosure & Discovery > Depositions at Trial
*HN7* Fed. R. Civ. P. 32 makes no distinction between "discovery depositions" and "trial depositions." More Like This Headnote

Evidence > Witnesses > Credibility & Impeachment

Evidence > Witnesses > Expert Testimony
*HN8* A fact finder must judge the weight and credibility of expert testimony, which naturally should include an understanding of the influences brought to bear on the expert. More Like This Headnote

**COUNSEL: [*1]** For Patricia Vandenbraak Administratrix of the Estate of James Michael Vandenbraak, Plaintiff: John C. Phillips, Jr., James P. Hall, Phillips, Goldman & Spence, P.A., Wilmington, DE.

For Patricia Vandenbraak individually, Patricia Vandenbraak as Next of Friend of Zachary Vandenbraak, a minor, Zachary Vandenbraak a minor, Plaintiffs: John C. Phillips, Jr., Phillips, Goldman & Spence, P.A., Wilmington, DE.

For Jacquelyn H. Vandenbraak, Plaintiff: Joseph J. Rhoades, Law Office of Joseph Rhoades, Esq., Wilmington, DE.

For M.D. Anthony Alfieri, Delaware Cardiovascular Associates, PA, D.O. Anthony D. Alfieri, Defendants: Gilbert F. Shelsby, Morgan, Shelsby & Leoni, Newark, DE.

**OPINION: MEMORANDUM ORDER**

**Introduction**

Before me is the defendants' motion *in limine* (Docket Item ["D.I."] 116; the "Motion") n1 seeking to prevent the plaintiffs from introducing testimony at trial from one of the experts that the defendants retained to testify in this matter but whom the defendants have now determined that they will not call to the stand. For the reasons that follow, the Motion is granted in part and denied in part. n2 It is granted to the extent that the plaintiffs **[*2]** will not be permitted to enforce a subpoena against the expert to compel his appearance and live testimony at trial. It is denied in all other respects, so that the plaintiffs will be permitted to read into the record during their rebuttal case pertinent portions of the expert's deposition testimony that are not otherwise objectionable, and the plaintiffs will be permitted to place before the jury evidence demonstrating that Dr. Fortuin was hired by the defendants as an expert witness.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Unless otherwise noted, references to Docket Items are to those items listed in the consolidated docket sheets for C. A. No. 01-482-KAJ and C. A. No. 01-492-KAJ.

n2 The plaintiffs have also filed a motion for leave to file a **sur**-reply with respect to the pending Motion. (D.I. 123.) That is denied. No argument beyond the standard briefing is necessary or appropriate in this instance. The plaintiffs have also requested oral argument (D.I. 124), which will not be granted because it would not be of assistance in resolving this matter and, given that jury selection is due to begin in three days, is impracticable to schedule at this point.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*3]**

**Background** n3

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 This background information sets forth the parties' positions and does not constitute findings of fact.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In these consolidated medical malpractice actions, brought in this court because of diversity of citizenship (*see* C.A. No. 01-482-KAJ D.I. 1 at P 7; C.A. No. 01-492-KAJ D.I. 1 at P 5), the defendants are Dr. Anthony Alfieri, a cardiologist, and Delaware Cardiovascular Associates, P.A., the medical group with which Dr. Alfieri practices. (C.A. No. 01-482-KAJ D.I. 1 at PP 4-5.) The plaintiffs in one of the cases are Zachary Vandenbraak, the minor son of the alleged victim of the defendants' malpractice, and Patricia Vandenbraak, individually, and as the administratrix of the estate of the alleged victim, her husband, and as the next friend for her minor son, Zachary. (*Id.* at PP 1-3.) In the other case, the plaintiff is Jacquelyn Vandenbraak, the decedent's daughter. (*See* C.A. No. 01-492-KAJ at P 6.)

Without going into a full description of the facts, it suffices for purposes **[*4]** of ruling on this Motion to say that the deceased husband and father, James Vandenbraak, went to Dr. Alfieri in July of 1999, complaining of chest pain. (C.A. No. 01-482-KAJ D.I. 1 at PP 10-11.) Dr. Alfieri examined Mr. Vandenbraak and sent him home, rather than having him admitted to the hospital. (*Id.* at P 12.) Two days later, Mr. Vandenbraak had a heart attack and died. (*Id.* at P 13.) The plaintiffs allege that Dr. Alfieri's actions and inaction were negligent and caused them damage. (*See id.* at PP 14-26.) The defendants, of course, deny that there was any negligence in the treatment and advice given to Mr. Vandenbraak. (*See* C.A. No. 01-482-KAJ D.I. 7 at PP 14-26; C.A. No. 01-492-KAJ D.I. 6 at PP 13-17.)

The defendants retained at least three expert witnesses, one of whom, Dr. Nicholas J. Fortuin, is the subject of the present Motion. The defendants designated Dr. Fortuin as a testifying expert, and provided to the plaintiffs an expert report from him, pursuant to the obligations imposed by Federal Rule of Civil Procedure 26(a)(2)(B). (*See* D.I. 118 at Ex. A.) For reasons not relevant here, the trial date in this matter **[*5]** was continued, so that a form of pretrial order was first submitted by the parties on December 14, 2004 (D.I. 84) and another form of pretrial order was later submitted on April 26, 2005 (D.I. 110). In both of those proposed orders, the defendants listed Dr. Fortuin as a testifying expert. (*See* D.I. 84 at sec. V.B.2.; D.I. 110 at sec. V.B.) n4 The defendants stated that Dr. Fortuin would "testify regarding the standard of care of a practicing cardiologist" and "opine that the patient [Mr. Vandenbraak] was properly evaluated by Dr. Alfieri during the July 22, 1999 visit." (*Id.*) In both of the proposed pretrial orders, the plaintiffs noted that they "reserved the right to call any and all witnesses identified by the defendants ..., including ... Nicholas Fortuin, M.D. ... ." (*Id.* at sec. V.A.)

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n4 The parties have inexplicably failed to number the pages of the proposed pretrial orders (a deficiency earlier called to their attention, *see* 12/20/04 pretrial conf. transcript at 5), so citations to those proposed orders are to the outline sections within which the noted text occurs.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*6]**

At the first pretrial conference held on December 20, 2004, defense counsel expressly noted that the plaintiffs had "reserved the right to call ... [the defense's] other two [expert witnesses,]" which included Dr. Fortuin. (12/20/04 pretrial conf. transcript at 7; *see also id.* at 19 (defense counsel characterizing the plaintiffs' position as an effort "to call Dr. Fortuin on a causation issue and some other aspects").) Plaintiffs' counsel n5 also stated, "we have reserved the right to call Dr. Fortuin ... ." (*Id.* at 11.) Plaintiffs' counsel went on to note that Dr. Fortuin had been the subject of expert disclosure by the defense, that the doctor had been deposed as an expert, and that he had, in the plaintiffs' view, "offered an opinion that if the decedent had been advised to go to the Emergency Room and received proper medical care, he would have in fact been alive today to a reasonable degree of medical probability." (*Id.* at 11-12.) Defense counsel responded, "if they want to call Dr. Fortuin in their case and call him as their witness, I have no objection to them doing that whatsoever, but I would, however, object to them simply reading his deposition transcript. **[*7]** In other words, if they want to call Dr. Fortuin in their case-in-chief, then they could call him as a witness." (*Id.* at 12-13.) That position was consistent with the first proposed pretrial order, which did not identify any objection with respect to the plaintiffs calling Dr. Fortuin as a witness. But people change their minds. In the second proposed pretrial order, the defendants shifted their position, stating that they objected to Dr. Fortuin being called as an expert on behalf of the plaintiffs. n6 (D.I. 110 at sec. V.B.2.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 I use the designation "plaintiffs' counsel" loosely, because Patricia and Zachary Vandenbraak are represented by one set of counsel, and Jacquelyn Vandenbraak is separately represented. The comments quoted above are by counsel representing Patricia and Zachary Vandenbraak.

n6 The defendants' changed position was not memorialized in a motion *in limine,* however, until after the second pretrial conference. The second form of pretrial order actually stated, "there are no motions in limine other than those previously submitted and decided by the Court at the December 20, 2004 Pretrial Conference." (D.I.110 at sec. IX.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## [*8]

## Standard

*HN1*Motions to admit or exclude evidence are entrusted to the sound discretion of the court. *United States v. Saada,* 212 F.3d 210, 220 (3d Cir. 2000). Of course, that discretion must be exercised within the context of an appropriate interpretation of the rule of evidence or procedure at issue. *See id.* ("We ... review a ruling to admit or exclude evidence, if based on a permissible interpretation of [the rules of evidence], for an abuse of discretion.")

## Discussion

In the present Motion, the defendants strongly object to what they had said five months ago they had no objection to "whatsoever," namely to any effort by the plaintiffs to call Dr. Fortuin as a witness. More specifically, the defendants argue, first, that the plaintiffs cannot call Dr. Fortuin because they did not identify him as an expert during discovery (D.I. 116 at 2); second, that "Delaware case law precludes the Plaintiffs from calling defense experts as their own witnesses under the facts of this case" (*id.* at 3); third, that it would be improper to allow the plaintiffs to read into the record any of the discovery testimony of Dr. Fortuin

because it would be hearsay **[*9]** and because it was a "discovery deposition" rather than a "videotaped deposition[] ... prepared in anticipation of trial" (*id.* at 3-4); and, fourth, if the plaintiffs are permitted to call Dr. Fortuin or to read into the record any of his deposition testimony, that the plaintiffs should not be permitted to refer to Dr. Fortuin as an expert retained by the defense, because that would be unduly prejudicial (*id.* at 4).

As to the defendants' first argument, it is based on the spurious notion that *HN2* Federal Rule of Civil Procedure 26(a)(2)(B) is intended to protect litigants from themselves. It is not. It is intended to protect opposing parties from unfair surprise and to allow such parties an opportunity to develop evidence to meet the expert testimony being preferred by the party that hired the expert. *See* Advisory Committee Notes to 1993 Amendments to Rule 26 ("The information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition **[*10]** of the witness."). There is nothing contrary to the spirit or letter of Rule 26 (a)(2)(B) in allowing an opposing party to use as substantive evidence an opinion propounded by the sponsoring party's expert, whether or not the latter has come to rue it. The defendants in this case can claim no surprise from the plaintiffs' effort to put before the jury portions of Dr. Fortuin's deposition testimony. On the contrary, the defendants have been expressly on notice of that effort for months and, indeed, explicitly noted their lack of opposition to it at the first pretrial conference. It would be an unwarranted twist on the Rule generally and in this case in particular to allow the defendants to invoke Rule 26(a)(2)(B) to block evidence generated by their own expert.

The defendants' second argument, that Delaware law precludes the plaintiffs from using testimony from an opposing expert, is likewise rejected. The dispute here involves fundamentally a point of procedural and evidentiary law, not a matter of substantive law. n7 There is no Delaware statute nor is there any Delaware Supreme Court authority cited by the defendants for the proposition that Delaware has made the policy choice to **[*11]** forbid plaintiffs in medical malpractice actions from relying on evidence generated by a defendant's expert witness. On the contrary, *HN3* Delaware Supreme Court precedent tends to demonstrate that unduly restricting a plaintiff's ability to rely on a defense expert's statements is reversible error. *See Green v. Alfred A.I. DuPont Institute,* 759 A.2d 1060, 1065 (Del. 2000) (trial court abused its discretion when it denied plaintiff the opportunity to rely upon defense expert's deposition in rebuttal). n8 And the Delaware Superior Court has ruled in circumstances bearing a striking resemblance to the case at bar that "the interest of fairness" can permit a plaintiff to call a defense expert. *See Winchester v. Hertrich,* 658 A.2d 1016, 1022 (Del. Super. 1995) (when defendant had in two separate pretrial stipulations listed a doctor as a trial witness, the "interest of fairness" led court "to conclude that the plaintiffs can call [the doctor] as their witness."); *cf. Fitzpatrick v. Holiday Inns, Inc.,* 507 F. Supp. 979, 979-80 (E.D. Pa. 1981) (ruling in the "interest of fairness" that plaintiff could compel the testimony of defense medical **[*12]** expert but would be required to pay doctor's fees for testimony). Thus, the defendants' argument that certain Delaware Superior Court procedural rulings bind me to grant their Motion *in limine* is unfounded.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 *HN4* While it is true that "the applicability of state law to diversity suits should ultimately depend not on the distinction between substance and procedure but on the policies underlying the Erie doctrine[,]" *Stoner v. Presbyterian University Hospital,* 609 F.2d 109, 111 (3d Cir. 1979), those labels still bear meaning that can be of significant assistance in understanding how to approach the "federal law versus state law" issue in a particular context. *Cf. In re Kaplan,* 143 F.3d 807, 815 (3d Cir. 1998) (noting in the context of a bankruptcy case that it is accepted reasoning that "preclusion rules are procedural rather

than substantive, and therefore the *Erie* doctrine does not require federal courts to apply state law"). A state court's interpretations of its rules of procedure ought not override the Federal Rules of Civil Procedure and the Federal Rules of Evidence when, as in this instance, there is no clearly articulated state substantive law that is contravened by the application of the federal rules. *Cf.* 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4512 at 405 (2d ed. 1996) ("Of all the procedural and quasi-procedural rules that are applied in federal courts, the Federal Rules of Evidence are the least affected by the doctrine announced in Erie Railroad Company v. Tompkins."). The *Erie* doctrine would entirely swallow the carefully crafted federal rules, if interpreted as broadly as implied in the defendants' argument. Rather, "the nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result ... ." *Edelson v. Soricelli,* 610 F.2d 131, 134 (3d Cir. 1979) (quoting *Guaranty Trust Co. v. York,* 326 U.S. 99, 109-10, 89 L. Ed. 2079, 65 S. Ct. 1464 (1944)). My decision on this issue is in full fidelity with that policy. **[*13]**

n8 The *Green* opinion, while distinguishing Delaware Superior Court precedent, does, however, emphasize the particular factual circumstances of that case, wherein there had been an understanding between the parties that the deposition testimony would be freely available for use by both parties at the trial. 759 A.2d at 1065.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

This does not end the inquiry, however. Whether binding or not, the precedent cited by the defendants is persuasive to this extent: it would indeed be impractical and an unfair burden on Dr. Fortuin to require that he appear at trial in response to a subpoena. The doctor is not a fact witness. The only testimony he can offer is the opinion testimony that he already gave when the defendants made him available for a deposition. That testimony is preserved and available for both parties' use. To enforce a subpoena for live and largely, if not entirely, duplicative testimony at this juncture would be in gross disregard of Dr. Fortuin's own busy schedule and his right to be treated fairly by the court. It could, in other words, implicate concerns that need not **[*14]** be implicated. *See Pinkett v. Brittingham,* 567 A.2d 858, 860 (Del. 1989) (noting that HN5 permitting a party to compel the testimony of an opposing party's expert witness may in some situations raise concerns involving the attorney-client privilege and involuntary servitude and ethical dilemmas for the subpoenaed expert). Since the plaintiffs' own position has been that they are prepared to proceed by reading the doctor's deposition testimony in during their rebuttal case (*see* 5/2/05 pretrial conf. transcript at 5), they are not disadvantaged in any significant degree by this ruling.

The defendants' fourth argument is focused not on the question of whether any evidence given by the doctor is admissible but rather on whether the doctor's deposition testimony specifically is admissible under the Federal Rules of Evidence. According to the defendants, the deposition testimony is hearsay and, beyond that, it would be unfair to the defendants to allow plaintiffs to use the deposition testimony because it was taken for discovery purposes, not to preserve testimony for trial, and allowing it to be read would be contrary to the defendants' expectation that they need not have **[*15]** questioned their own witness during the deposition. (*See* D.I. 116 at 3-4.)

The hearsay objection simply does not bear scrutiny. Federal Rule of Civil Procedure 32(a) provides in pertinent part that

HN6 At the trial ..., any part or all of a deposition, so far as admissible under the

rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions: ... (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

Under either subdivision (3)(D) or (3)(E) of the rule, the use of the deposition as substantive **[*16]** evidence is proper in this case. I have determined, as the defendants themselves requested, that the plaintiffs may not procure Dr. Fortuin's testimony by subpoena, hence Rule 32(a)(3)(D) applies. Even if it did not, however, Rule 32(a)(3)(E) would allow use of the deposition. The plaintiffs put the defendants and the court on notice at least as early as the filing of the first proposed pretrial order that they wanted to put Dr. Fortuin's deposition testimony before the jury. (See 12/20/04 pretrial conf. transcript at 12 ("We are asking permission to either call [Dr. Fortuin] ... and/or read in [his] deposition testimony ... .").) Given that in both the first and the second proposed pretrial orders the defendants listed Dr. Fortuin as a witness that they intended to call at trial, and that they are only now taking the position that they do not want his testimony before the jury in any form or fashion, this case presents exceptional circumstances making it desirable in the interest of justice to permit the deposition to be used. n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 The defendants rely on *Kirk v. Raymark Indus., Inc.,* 61 F.3d 147 (3d Cir. 1995) as support for their argument that the rule against hearsay forbids use of Dr. Fortuin's deposition. That case is entirely inapposite. It involved a party's use at trial of testimony given by a witness in a different case, and therefore the opinion in *Kirk* did not involve or even mention the import of Federal Rule of Civil Procedure 32, which is the basis of decision here.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*17]**

*HN7* Rule 32 makes no distinction between "discovery depositions" and "trial depositions." The defendants were present at the deposition of their expert and were at liberty to ask any questions necessary to correct the record or make sure that his opinions were not otherwise inaccurately reflected. There was apparently no agreement between counsel that any procedural or evidentiary rules would be waived. Thus, If the defendants chose not to ask questions, they must live with that choice. They cannot now be heard to complain about living with the record they had a hand in creating. Cf. *ONTI, Inc. v. Integra Bank*, 1998 Del. Ch. LEXIS 168, Civ. A. No. 14514, 1998 WL 671263 at *3 (Del. Ch. Aug. 25, 1998) ("Each of the parties was free to select and present the testimony of the experts of their choosing, and neither party claims that the testimony in the present case falls outside the scope of the Experts' expertise. Therefore, the designated depositions and other testimony should be admitted.")

The defendants' final argument is that, if testimony from Dr. Fortuin is presented to the jury, the jury should not be told that he was retained by the defendants. Their assertion is that it

would be "inherently **[\*18]** prejudicial to the defense" for the jury to know who had hired the doctor. (D.I. 116 at 4.) The defendants' assertion, however, is no more than that. They do not explain how, under the balancing required by Federal Rule of Evidence 403, the identification of Dr. Fortuin as a defense expert would be so unfairly prejudicial or confusing as to substantially outweigh the probative value of that information. I conclude that the balancing does not favor exclusion of evidence of that fact. On the contrary, *HN8* a fact finder must judge the weight and credibility of expert testimony, *Meinhardt v. Unisys Corp. (In re Unisys Sav. Plan Litig.), 173 F.3d 145, 157 (3d Cir. 1999)*, which naturally should include an understanding of the influences brought to bear on the expert. *See Fenlon v. Thayer, 127 N.H. 702, 506 A.2d 319, 323 (N.H. 1986)* (trial court's order forbidding plaintiff from eliciting testimony that a doctor was originally hired by the defense "was erroneous because [his] status as a consultant pertains to the weight and credibility of his testimony"); *cf. ONTI, Inc.,* 1998 Del. Ch. LEXIS 168, 1998 WL 671263, at *2 (noting "that experts are more often than not hired **[\*19]** hands, brought in by a party in order to propose the truth as that party sees it, or authorized by that party to represent the experts' own opinions as they conform to the party's position"). I will therefore permit the plaintiffs to place before the jury evidence that advises the jury that Dr. Fortuin was hired by the defendants.

## Conclusion

Based upon the foregoing reasons and authorities, it is hereby ORDERED that the defendants' Motion (D.I. 116) is GRANTED to the extent that the trial subpoena served on Dr. Fortuin by the plaintiffs will not be enforced; in all other respects the Motion is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

May 25, 2005
Wilmington, Delaware

Service: Get by LEXSEE®
Citation: 2005 us dist lexis 9882
Focus: sur (Exit FOCUS™)
View: Full
Date/Time: Wednesday, June 15, 2005 - 9:50 AM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc  All rights reserved

# EXHIBIT B

Service: **Get by LEXSEE®**
Citation: 2005 U.S. Dist. LEXIS 791
 Focus: **reply** (Exit FOCUS™)

*2005 U.S. Dist. LEXIS 791, *; 73 U.S.P.Q.2D (BNA) 1898*

WEBLOYALTY.COM, INC., Plaintiff, v. CONSUMER INNOVATIONS, LLC, Defendant.

Civil Action No. 04-90-KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2005 U.S. Dist. LEXIS 791; 73 U.S.P.Q.2D (BNA) 1898

January 13, 2005, Decided

**SUBSEQUENT HISTORY:** Motion granted by Webloyalty.com, Inc. v. Consumer Innovations, L.L.C., 2005 U.S. Dist. LEXIS 7344 (D. Del., Feb. 17, 2005)

**DISPOSITION:** Defendant's Motion for Summary Judgment was denied and Plaintiff's Motion for Discovery was denied as moot.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff marketer of online membership clubs sued defendant competitor, alleging copyright infringement and unfair competition in violation of 15 U.S.C.S. § 1125(a). The competitor moved for summary judgment.

**OVERVIEW:** The competitor was not entitled to summary judgment on the copyright infringement claim as the competitor had failed to rebut the prima facie case of originality established by the marketer's copyright registration for an online sell page and the competitor admitted that determining the cause of the substantial similarity with its online sell page was a question of fact. Moreover, the competitor's arguments based on the doctrines of merger and scenes-a-faire did not require summary judgment as it failed to establish that there was a limited or singular manner to express the ideas on its sell page. Summary judgment was also denied on the unfair competition claim as the competitor's arguments presented in its **reply** brief should have been presented in its opening brief for proper consideration under U.S. Dist. Ct., D. Del., R. 7.1.3(c)(2).

**OUTCOME:** The competitor's motion for summary judgment was denied.

**CORE TERMS:** summary judgment, copying, similarity, consumer, originality, discovery, non-moving, copyrighted, scenes-a-faire, protectible, copied, opening brief, unfair competition claim, confirmation, membership, club, issues of material fact, unfair competition, registration, genuine, merger, partner, banner, reply brief, copyright infringement, prima facie evidence, matter of law, advertisement, infringing, actionable

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard 🔍
**HN1** ⚖️ Pursuant to Fed. R. Civ. P. 56(c), a party is entitled to summary judgment if a court determines from its examination of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there are no genuine issues of material fact and that the moving party is entitled to

judgment as a matter of law. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN2± In determining whether there is a triable issue of material fact for purposes of a
summary judgment motion, a court must review the evidence and construe all
inferences in the light most favorable to the nonmoving party. However, a court
should not make credibility determinations or weigh the evidence. To defeat a
motion for summary judgment, the nonmoving party must do more than simply
show that there is some metaphysical doubt as to the material facts. The
nonmoving party must set forth specific facts showing that there is a genuine issue
for trial. Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a
rational trier of fact to find for the non-moving party, there is no genuine issue for
trial. Accordingly, a mere scintilla of evidence in support of the nonmoving party is
insufficient for a court to deny summary judgment. More Like This Headnote

Copyright Law > Civil Infringement Actions > Elements > Ownership
HN3± To prove copyright infringement, a plaintiff must establish that it owns a valid
copyright and that the copyrighted material was copied by the defendant.
Certificates of registration issued by the United States Copyright Office constitute
prima facie evidence of the validity of the copyright and ownership of the
material. More Like This Headnote

Copyright Law > Civil Infringement Actions > Elements > Substantial Similarity > General Overview
HN4± Copying is a shorthand reference to the act of infringing any of the copyright
owner's five exclusive rights set forth at 17 U.S.C.S. § 106. Because it is rarely
possible to prove copying through direct evidence, copying may be proven
inferentially by showing that the defendant had access to the allegedly infringed
copyrighted work and that the allegedly infringing work is substantially similar to
the copyrighted work. The test for substantial similarity has two considerations:
extrinsic and intrinsic. Extrinsically, experts may be called upon to determine
whether there is sufficient similarity between the works so as to conclude that the
alleged infringer copied the work. Intrinsically, the fact finder is to determine
whether a lay-observer would believe that the copying was of protectable aspects
of the copyrighted work. These two considerations are described as whether the
ordinary observer, unless he set out to detect the disparities, would be disposed to
overlook them, and regard their aesthetic appeal as the same. More Like This Headnote

Copyright Law > Civil Infringement Actions > Elements > Substantial Similarity > General Overview
HN5± Not all copying is copyright infringement. Therefore, the trial court must consider,
whether the copying is actionable, viewing the item through the lay person's eyes,
focusing on whether the substantial similarities relate to protectable material. This
test makes clear that it is only after actual copying is established that one claiming
infringement then proceeds to demonstrate that the copying was improper or
unlawful by showing that the second work bears substantial similarity to protected
expression in the earlier work. More Like This Headnote

Copyright Law > Civil Infringement Actions > Presumptions & Requirements > Presumption of Originality
HN6± In the context of a copyright infringement claim, certificates of registration
constitute prima facie evidence of originality. More Like This Headnote

Copyright Law > Civil Infringement Actions > Elements > Copying by Defendants
HN7± In a copyright infringement action, a defendant cannot offer evidence of prior
similar works without evidence that the plaintiff copied those
works. More Like This Headnote

Copyright Law > Civil Infringement Actions > Presumptions & Requirements > Presumption of Originality

*HN8* Unless the originality vel non of a copyrighted work is determinable as a matter of law, it becomes a question of fact for the fact finder to resolve. More Like This Headnote

Copyright Law > Subject Matter > Literary Works > Scope of Protection

*HN9* Under the doctrine of scenes-a-faire, copyright protection is denied to those expressions that are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting. Scenes-a-faire are incidents, characters, or settings which are as a practical matter indispensable in the treatment of a given topic. The scenes-a-faire doctrine denies copyright protection to an idea that is capable of expression only in a stereotyped form. More Like This Headnote

Copyright Law > Subject Matter > General Overview

*HN10* The doctrine of merger applies where there is a merger of idea and expression, such that a given idea is inseparably tied to a particular expression. The idea and the expression will coincide when the expression provides nothing new or additional over the idea. Under such circumstances, protecting the expression would entail protecting the idea itself, which is impermissible under copyright law. More Like This Headnote

Civil Procedure > Pleading & Practice > Motion Practice Generally > Content & Format of Motions
Civil Procedure > Pleading & Practice > Pleadings > Interpretation

*HN11* See U.S. Dist. Ct., D. Del., R. 7.1.3(c)(2).

**COUNSEL: [*1]** For WEBLOYALTY.COM INC., Plaintiff: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For CONSUMER INNOVATIONS, LLC, Defendant: Joseph S. Shannon, Daniel A. Griffith, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION: MEMORANDUM ORDER**

**I. INTRODUCTION**

Presently before me is a Motion for Summary Judgment (Docket Item ["D.I."] 91) filed by defendant Consumer Innovations, LLC ("Consumer Innovations") and a Motion for Discovery on the Issue of Personal Jurisdiction (D.I. 27; "Motion for Discovery") filed by Webloyalty.com, Inc. ("Webloyalty"). Webloyalty filed this action on February 9, 2004 (D.I. 1) and subsequently filed a First Amended Complaint (the "Complaint") on May 26, 2004 (D.I. 52). Webloyalty alleges two counts in its Complaint. First, that Consumer Innovations infringed its copyright, Registration No. TX5842219, "by using strikingly or substantially similar sell pages in commerce ... without Webloyalty's permission, license or consent." (*Id.* at PP 20, 24, 25.) Second, that Consumer Innovations' "use in commerce of Webloyalty's advertisements **[*2]** is likely to cause confusion, mistake or deception as to both [Consumer Innovations'] affiliation, connection, or association with Webloyalty ... [and] the origin, sponsorship or approval of [Consumer Innovations'] goods, services, or commercial activities," such that Consumer Innovations' activities constitute "unfair competition and a

false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)." (*Id.* at PP 31, 32, 33.) This court has jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons that follow, Consumer Innovations' Motion for Summary Judgment (D.I. 91) will be denied and Webloyalty's Motion for Discovery (D.I. 27) will be denied as moot. n1

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Webloyalty filed its Motion for Discovery in response to Consumer Innovations' Motion to Dismiss (D.I. 16). Webloyalty sought discovery "only if the Court determined that [its] opposition to Consumer Innovations' motion to dismiss for lack of in personam jurisdiction is not sufficient by itself to result in denial of [Consumer Innovations'] motion." (*Id.* at 1.) On September 2, 2004, Consumer Innovations filed a Notice of Withdrawal of its Motion to Dismiss. (D.I. 84.) Based on Consumer Innovations' withdrawal of its motion, I consider Webloyalty's Motion for Discovery (D.I. 16) to be moot.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*3]

## II. BACKGROUND n2

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 The following rendition of background information does not constitute findings of fact and is cast in the light most favorable to the non-moving party, the plaintiff.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Webloyalty and Consumer Innovations are businesses engaged in the marketing of online membership clubs to consumers. (D.I. 92 at 3; D.I. 94 at 3.) Consumers purchasing memberships are able to purchase goods and/or services offered through the clubs at a discount. (D.I. 94 at 3.) One of the ways in which Webloyalty markets these club memberships is by contracting with other companies ("partner companies"), who sell goods and services on line, to place a banner on the partner company's sale confirmation web page. (D.I. 94 at 3.) Generally, the marketing of each parties' club memberships occurs in the following manner:

> 1. A consumer completes an online purchase from the partner company and is then directed to the partner company's "confirmation page."
> 2. The confirmation page has a "banner advertisement" with **[*4]** an offer from Webloyalty or Consumer Innovations.
> 3. If the consumer clicks on the banner advertisement, the consumer is then transferred to the "sell page" on the website for Webloyalty or Consumer Innovations depending on whose banner ad appeared.
> 4. The sell page offers the consumer the opportunity to become a member of the particular discount program. It contains the material terms of the program, the offer details, and a description of the program. The sell page also allows the consumer to return to the partner company's website by clicking on a link.

(See D.I. 92 at 4.)

In October 2002, n3 Webloyalty entered into a contract with a company called Walter Drake to promote its services on the Walter Drake confirmation page in the manner described above. (D.I. 94 at 3.) From that time until August of 2003, Webloyalty was the only company to offer these services through Walter Drake. (*See id.* at 4.) In August of 2003, Walter Drake ran a test to determine whether its consumers preferred the services of Webloyalty or those of one of its competitors, InQ. (*Id.* at 3-4.) At the end of the test period, the Webloyalty banner was again placed on all of the Walter Drake confirmation **[*5]** pages. (*Id.* at 4.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Drawing all reasonable inferences in favor of the non-moving party for the purposes of this motion, I will accept Webloyalty's statement that the date of contract was October, 2002, although Consumer Innovations stated that it was in or about November, 2002. (D.I. 94 at 3.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In December 2003, n4 Consumer Innovations entered into a deal with a broker n5 pursuant to which it would offer its "Traveler Innovations" service on the Walter Drake confirmation page. (D.I. 94 at 4.) The purpose of this arrangement was to test Consumer Innovations' program against Webloyalty's "Reservation Rewards" program. (*Id.*) In this arrangement, customers would alternatively be directed by Walter Drake to either the Consumer Innovations or Webloyalty sell page. (*Id.*) As part of the agreement between Walter Drake and Webloyalty, and the agreement between Walter Drake and Consumer Innovations, consumers joining either the "Reservation Rewards" or "Travelers Innovations" program would be given a $ 10 credit **[*6]** toward their next Walter Drake purchase. (D.I. 92 at 5.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 Drawing all reasonable inferences in favor of the non-moving party for the purposes of this motion, I will accept Webloyalty's statement that the agreement was made in December, 2003, although Consumer Innovations stated that it was in or about January, 2004. (D.I. 94 at 4.)

n5 Webloyalty alleges that the agreement was between Consumer Innovations and a "broker," whereas Consumer Innovations alleges that the agreement was made between it and Walter Drake. (D.I. 94 at 4; D.I. 92 at 5.) Either way, the result, as described above, was the same.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The present dispute centers on Consumer Innovations' sell page. Webloyalty alleges that Consumer Innovations created its sell page by copying portions of Webloyatly's sell page. (*See* D.I. 92 at 4-5.) Several portions of Webloyalty's and Consumer Innovations' sell pages contained identical verbiage. (D.I. 52, Ex. E at 1-2.) Examples of such identical verbiage include: n6 "Try all the benefits for the next **[*7]** 30 days FREE and see how much you save! There's no obligation to continue. If you are completely satisfied, do nothing and you'll enjoy ongoing savings for only    n7 a month;" "For your convenience    n8 will use the

contact and credit or debit card information you provided to Walter Drake today for billing and benefit processing;" and "To thank you for your purchase at Walter Drake today, click YES below to get your $ 10.00 Cash Back Gift ... on your next Walter Drake purchase plus sign up for all the money-saving benefits of   , n9 our ... online travel ... discounts ... program!" (*Id.*)

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Although the full extent of Webloyalty's copyright is not disclosed in the record, the phrases listed above are representative of the information presented on Webloyalty's and Consumer Innovations' sell pages.

n7 In Webloyalty's sell page, the cost is $ 9 a month whereas on Consumer Innovations' sell page, the cost is $ 7 a month. (D.I. 52, Ex. E at 1-2.)

n8 The blank contains the program name, "Reservation Rewards" in Webloyalty's sell page, and "Traveler Innovations" in Consumer Innovations' sell page. (D.I. 52, Ex. Eat 1-2.) **[*8]**

n9 The blank contains the program names as in footnote 8.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Consumer Innovations has since modified its sell page. (D.I. 92 at 4-5.) Webloyalty admits that Consumer Innovations' modified sell page does not infringe its copyright. (*Id.* at 5.)

## III. STANDARD OF REVIEW

*HN1* Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *HN2* In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).* However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).* **[*9]** To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)* (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd., 475 U.S. at 587* (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).*

## IV. DISCUSSION

Webloyalty alleges that Consumer Innovations infringed its copyright (D.I. 52 at PP 20, 24, 25) and that Consumer Innovations' activities constitute unfair competition (*id.* at 31, 32, 33).

A. Copyright Infringement

**HN3** To prove copyright infringement, a plaintiff must establish that it owns a valid copyright **[*10]** and that the copyrighted material was copied by the defendant. *Dam Things from Denmark, a/k/a Troll Company ApS v. Russ Berrie & Co., Inc.,* 290 F.3d 548 at 561 (3d Cir. 2002) (citing *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.,* 797 F.2d 1222, 1231 (3d Cir. 1986)). Certificates of registration issued by the U.S. Copyright Office constitute *prima facie* evidence of the validity of the copyright and ownership of the material. *Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277 at 290-91 (3d Cir. 1991) (internal citations omitted). Consumer Innovations concedes that Webloyalty's "ownership of the copyrighted property is undisputed" and that, therefore, the question is whether it copied protectible material from the Webloyalty sell page. (D.I. 92 at 8.)

**HN4** Copying is a "shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set forth at 17 U.S.C. § 106." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 206 (3d Cir. 2002) (quoting *Ford Motor,* 930 F.2d at 291.) Because it is rarely possible to prove copying **[*11]** through direct evidence, *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1110 (9th Cir. 1970), "copying may be proven inferentially by showing that the defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work." *Whelan Assocs.,* 797 F.2d at 1231-32 (internal citations omitted). The test for "substantial similarity" has two considerations: extrinsic and intrinsic. *Dam Things from Denmark,* 290 F.3d at 562. Extrinsically, experts "may be called upon to determine whether there is sufficient similarity between the works so as to conclude that the alleged infringer 'copied' the work." *Id.* (citing *Whelan Assocs.,* 797 F.2d at 1232.) Intrinsically, the fact-finder is to determine whether a "lay-observer" would "believe that the copying was of protectible aspects of the copyrighted work." *Id.* (citing *Whelan Assocs.,* 797 F.2d at 1232.) These two considerations have been described as whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard **[*12]** their aesthetic appeal as the same." n10 *See id.* (quoting *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 765 (2d Cir. 1991)).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n10 In *Dam Things From Denmark,* the Third Circuit noted that it had previously adopted the Second Circuit's test for substantial similarity, as described in *Arnstein v. Porter,* 154 F.2d 464, 468-69 (2d Cir. 1946). *Dam Things From Denmark,* 290 F.3d at 562. This test consists of two considerations: "'actual copying' which focuses on access in conjunction with 'probative' similarity, and 'actionable copying' which considers whether there is 'substantial' similarity between the alleged infringing work and the *protectible elements* of the original work." *Dam Things from Denmark,* 290 F.3d at 562 (internal citations omitted). The test for actual copying can be established by direct evidence or inferred by evidence of access and "similarities that are probative of copying between the works, and expert testimony." *Id.* (internal citations omitted).

The Supreme Court, however, has explained that **HN5** "not all copying ... is copyright infringement." *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 113 L. Ed. 2d 358, 111 S. Ct. 1282 (1991). Therefore, the trial court must consider, "whether the copying is actionable, viewing the item through the lay person's eyes, focusing on whether the substantial similarities relate to protectible material." *Dam Things From Denmark,* 290

F.3d at 562 (internal citation omitted.) This test makes clear that "it is only after actual copying is established that one claiming infringement then proceeds to demonstrate that the copying was improper or unlawful by showing that the second work bears 'substantial similarity' to protected expression in the earlier work." *Id.* (internal quotation omitted).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*13]**

Consumer Innovations makes two arguments as to why there is no genuine issue of material fact. First, it argues that the language common to both Consumer Innovations' and Webloyalty's sell pages is not protectible under the Copyright Act of 1976 because the language is merely functional or standard in the industry and therefore, was not originally created by Webloyalty. (D.I. 92 at 9-10.) Second, it argues that the common language was made up of common expressions which may be lawfully appropriated under the merger and scenes-a-faire doctrines. (*Id.* at 10-13.)

Webloyalty counter-argues that Consumer Innovations has failed to show that no genuine issues of material fact exist and, therefore, summary judgment for Consumer Innovations is not appropriate. First, Webloyalty notes that evidence of its copyright registration is *prima facie* evidence of originality. (D.I. 94 at 6.) Webloyalty argues that Consumer Innovations has failed to overcome this presumption of originality because there is no evidence that Webloyalty's sell page was copied from prior similar works. (*Id.* at 6-7.) Second, Webloyalty argues that the doctrines of merger and scenes-a-faire do not apply because **[*14]** there are "a number of ways" to express the idea of "a $ 10 incentive for joining a membership club and for instructing individuals how to join." (*Id.* at 11.)

Webloyalty is correct that there are genuine issues of material fact that require denial of Consumer Innovations' Motion for Summary Judgment. Consumer Innovations has failed to rebut the *prima facie* case of originality established by Webloyalty's copyright registration. *HN6* Certificates of registration constitute *prima facie* evidence of originality. *Blendingwell Music, Inc. v. Moor-Law, Inc.,* 612 F. Supp. 474, 480 (D. Del. 1985) (internal citations omitted). Consumer Innovations' argument as to lack of originality is entirely unsupported. n11 Consumer Innovations argued that the common language of both sell pages was "standard in the industry" or consisted of "functional instructions" such that it was not protectible. (D.I. 92 at 9-10.) Consumer Innovations, however, does not provide any evidentiary or legal support for this argument. Even if Consumer Innovations had such evidence, *HN7* a defendant cannot offer evidence of prior similar works without evidence that plaintiff copied those works. 3 Melville **[*15]** B. Nimmer & David Nimmer, *Nimmeron Copyright* § 12.11[B][1]. Furthermore, *HN8* "unless the originality vel non of a copyrighted work is determinable as a matter of law, it becomes a question of fact for the fact finder to resolve." *Scientist, Inc. v. Lindsey,* 1996 U.S. Dist. LEXIS 7099, No. CIV. A. 95-7960, 1996 WL 278778, at *3 n.7 (D. Del. May 22, 1996) (quoting *Modern Publ'g v. Landoll, Inc.,* 849 F. Supp. 22, 24 (S.D.N.Y. 1994)).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 Consumer Innovations seems to imply that the common language of the sell pages was standard in the industry because the individual who wrote the sell page for Webloyalty, and the individual who allegedly wrote the sell page for Consumer Innovations, were both previously employed by Trilegiant, a company that also used sell pages to conduct business. (D.I. 92 at 9.) Consumer Innovations noted that it was "more than a little ironic" that both men had the same former employer. (*Id.*) Consumer Innovations, however, has failed to present evidence that Webloyalty personnel copied the sell page from the Trilegiant sell page or any other sell page, or, for that matter, whether the Trilegiant sell page was even created

before Webloyalty's.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*16]**

It is not until Consumer Innovations' **Reply** Brief in support of its Motion for Summary Judgment that it moves past its lack of originality argument and argues that any substantial similarity between the two sell pages is not actionable. (D.I. 98 at 6-8.) It admits, however, as it must, that the determination of the cause of the substantial similarity, "is a question of fact." (*Id.* at 7 (quoting *Whelan,* 797 F.2d at 1232 n.23.)) Therefore, it is clear that Consumer Innovations has not rebutted the *prima facie* case of originality nor has it established that there are no genuine issues of material fact relating to the originality of the work at issue or the determination of substantial similarity.

Consumer Innovations' second argument is that the functional nature of the language and the cash back feature are "external factors" which limit the number of ways to express the ideas conveyed on the sell page such that the doctrines of merger or scenes-a-faire prevent Webloyalty from claiming an exclusive right to the common language of the sell pages. (D.I. 92 at 10-13.) *HN9* Under the doctrine of scenes-a-faire, copyright protection is denied "to those expressions that **[*17]** are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting." *Dun & Bradstreet Software Servs., Inc.,* 307 F.3d at 215 (quoting *Gates Rubber Co. v. Bando Chem. Indus.,* 9 F.3d 823, 838 (10th cir. 1993)). Scenes-a-faire are "incidents, characters or settings which are as a practical matter indispensable ... in the treatment of a given topic." *Whelan Assocs., 797 F.2d at 1236* (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 616 (7th Cir. 1982), *cert. denied,* 459 U.S. 880 (1982)). The scenes-a-faire doctrine denies copyright protection to an idea that is capable of expression only in a stereotyped form. *Atari, Inc.,* 672 F.2d at 616.

*HN10* The doctrine of merger applies where there is a merger of idea and expression, such that a given idea is inseparably tied to a particular expression. *Educ. Testing Servs. v. Katzman,* 793 F.2d 533, 539 (3d Cir. 1986). "The idea and the expression will coincide when the expression provides nothing new or additional over the idea." *Midway Mfg. Co. v. Bandai-America, Inc.,* 546 F. Supp. 125, 148 (D.N.J. 1982) **[*18]** (internal citation omitted). Under such circumstances, protecting the expression would entail protecting the idea itself, which is impermissible under copyright law. *Atari, Inc.,* 672 F.2d at 612.

Consumer Innovations' arguments based on these doctrines are also insufficient to establish that summary judgment is appropriate. For either doctrine to apply, Consumer Innovations must establish that there is a limited, if not singular, manner to express the ideas presented on the sell page. It has not made any such showing. The evidence presented by Consumer Innovations, if anything, proves the opposite. Consumer Innovations provides two examples of sell pages that offer a $ 10 incentive for joining a membership club and inform the reader how to join. (D.I. 92 at Ex. I; D.I. 95 at Ex. 14, Dec. Anne M. Sterba.) These sell pages clearly show that there are other ways in which those ideas can be expressed. Neither of these sell pages uses the same text or arrangement as Webloyalty's copyrighted page. While, the "external factors" described by Consumer Innovations may provide the central ideas, there apparently are a number of ways to express them. n12 Therefore, Consumer Innovations **[*19]** has not established that either doctrine supports their argument for summary judgment on this record.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n12 For instance, Webloyalty submitted seven examples of sell or enrollment pages embodying a cash back offer which it admits do not utilize the same text or same look and

feel as Webloyalty's sell page. (D.I. 96 at Ex. A, Dec. Tamra Lichtman.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Because Consumer Innovations has failed to satisfy its burden of proving that no genuine issues of material fact exist as to the issue of copyright infringement, its Motion for Summary Judgment is denied.

B. Unfair Competition

Consumer Innovations' entire argument for summary judgment on Webloyalty's unfair competition claim in its Opening Brief in support of its Motion for Summary Judgment is contained in two sentences. First, Consumer Innovations states that: "Because the elements common to the Reservation Rewards sell page and the Travelers Innovations sell page relate only to the non-copyrightable language, plaintiff's claims for infringement, unfair competition, **[*20]** and trade dress must be dismissed as a matter of law." (D.I. 92 at 8.) Then Consumer Innovations concludes with a request for "Summary Judgment in favor of Consumer Innovations, LLC, dismissing all claims against it with prejudice." (D.I. 92 at 15.) In its **Reply** Brief in support of its Motion for Summary Judgment (D.I. 98; "**Reply** Brief"), however, Consumer Innovations dedicated nearly 10 pages to its argument for why it is entitled to summary judgment on Webloyalty's unfair competition claim. Consumer Innovations' explanation for why it did not earlier address Webloyalty's unfair competition claim was that Webloyalty did not provide any evidence to establish any of the elements of its unfair competition claim throughout discovery. (D.I. 98 at 11-12.)

Delaware Local Rule 7.1.3(c)(2) pertains to **Reply** Briefs and states: *HN11* "The party filing the opening brief shall not reserve material for the **reply** brief which should have been included in a full and fair opening brief. ..." Therefore, if Consumer Innovations had an argument to make as to why summary judgment on Webloyalty's unfair competition claim was appropriate, it should have been raised in their opening brief, unless it was responding **[*21]** to an argument made by Webloyalty in its Answering Brief (D.I. 94). Consumer Innovations, however, was not responding to an argument raised in Webloyalty's Answering Brief because Webloyalty's entire argument, presented in its "Summary of Argument," consisted of the following: "Although [Consumer Innovations'] motion formulaically requests dismissal "of any and all claims against it" ... [Consumer Innovations'] Opening Brief ... does not even mention Webloyalty's allegations of unfair competition under the Lanham Act 15 U.S.C. § 1125(a) ... and contains no arguments as to why Count II should be dismissed." (D.I. 94 at 2.)

Because Consumer Innovations' arguments presented on pages 11 through 20 of its **Reply** Brief should have been presented in its Opening Brief for proper consideration pursuant to Local Rule 7.1.3(c)(2), its Motion for Summary Judgment as to Webloyalty's unfair competition claim is also denied.

**V. CONCLUSION**

Accordingly, it is hereby ORDERED that Consumer Innovations' Motion for Summary Judgment (D.I. 91) is DENIED and Webloyalty's Motion for Discovery (D.I. 27) is DENIED as moot.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

Wilmington, **[*22]** Delaware

January 13, 2005

Service: **Get by LEXSEE®**
Citation: 2005 U.S. Dist. LEXIS 791
Focus: **reply**  (Exit FOCUS™)
View: Full
Date/Time: Wednesday, June 15, 2005 - 9:52 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved