# EXHIBIT B



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - -

SARA S. ECHEVARRIA,           :   CASE NO.
                              :
            Plaintiff,        :   05-284 (GMS)
                              :
      v.                      :
                              :
U-HAUL INTERNATIONAL,         :
INC., ROGER MAYFIELD,         :
and NATIONWIDE GENERAL        :
INSURANCE COMPANY,            :
                              :
            Defendants.       :

- - -

January 24, 2007

- - -

Oral deposition of FRANK M. COSTANZO, held in the offices of Murphy, Spadaro & Landon, Suite 210, 1011 Center Road, Wilmington, Delaware 19805, beginning at 3:03 p.m., on the above date, before Shenna M. Basye-Cara, a Professional Reporter and a Notary Public in the State of Delaware.

- - -

ESQUIRE DEPOSITION SERVICES
Suite 760, One Commerce Center
12th & Orange Streets
Wilmington, Delaware 19801
(302) 426-9857

```
 1  APPEARANCES:
 2
 3          MURPHY, SPADARO & LANDON
            BY:  ROGER D. LANDON, ESQUIRE
 4          Suite 210
            1011 Centre Road
 5          Wilmington, Delaware 19805
            (302) 472-8105
 6          Representing the Plaintiff
 7
 8          QUARLES & BRADY, LLP
            BY:  FRANCIS H. LOCOCO, ESQUIRE
 9          411 East Wisconsin Avenue
            Milwaukee, Wisconsin 53202-4497
10          (414) 277-5341
            Representing Defendant U-Haul
11          International, Inc.
12
13          FERRY, JOSEPH & PEARCE, P.A.
            BY:  ROBERT K. PEARCE, ESQUIRE
14          Suite 904
            824 Market Street Mall
15          Wilmington, Delaware 19801
            (302) 575-1555
16          Representing Defendant Roger
            Mayfield
17
18
            SHELSBY & LEONI
19          BY:  MICHAEL LOGULLO, ESQUIRE
            221 Main Street
20          Stanton, Delaware 19804
            (302) 454-7430
21          Representing Defendant Nationwide
            General Insurance Company
22
                       -  -  -
23
24
```

Page 3

```
 1                    -  -  -
 2                  I N D E X
 3                    -  -  -
 4 EXAMINATION OF:  Frank M. Costanzo
 5 BY MR. LOCOCO.......................4, 82
 6 BY MR. PEARCE..........................79
 7
 8
 9                    -  -  -
10               E X H I B I T S
11                    -  -  -
12
   NO.           DESCRIPTION              PAGE
13
14 Costanzo-1    Curriculum Vitae           4
15 Costanzo-2    10/20/06 Collision
      Reconstruction Report                 4
16
   Costanzo-3    1/20/05 Statement of
17    S. Echevarria                        53
18 Costanzo-4    Copies of Photographs
      of Jetta, Accident Scene & Trailer  65
19
   Costanzo-5    Copies of Photographs
20    of Exemplar Trailer                  65
21
22 NOTE:  Exhibits 3, 4, and 5 were retained by
   the witness and are not attached to the
23 transcript.
24
```

ESQUIRE DEPOSITION SERVICES

Frank M. Costanzo
Page 28

```
 1  explanations.
 2         A.      In my opinion, no.
 3         Q.      Why not?
 4         A.      The distance he operated the
 5  unit after he detached it.
 6         Q.      Assuming that he never
 7  unhooked it and rehooked it after he left
 8  North -- you're assuming that he never
 9  unhooked it again after he left North
10  Carolina; is that correct?
11         A.      Yes.
12         Q.      And if that testimony is
13  inaccurate, would you agree that his failure
14  to properly hook up the trailer is another
15  explanation for the detachment in this case?
16         A.      It would depend when he
17  detaches the vehicle.
18         Q.      Are you still of the opinion
19  that Mr. Mayfield was negligent?
20         A.      Yes.
21         Q.      Okay.  Why was he negligent?
22         A.      Well, he did have the ability,
23  whenever the vehicle -- whenever -- whenever
24  the tow unit, as described by Mr. Mayfield,
```

Frank M. Costanzo

Page 28

```
 1  explanations.
 2         A.      In my opinion, no.
 3         Q.      Why not?
 4         A.      The distance he operated the
 5  unit after he detached it.
 6         Q.      Assuming that he never
 7  unhooked it and rehooked it after he left
 8  North -- you're assuming that he never
 9  unhooked it again after he left North
10  Carolina; is that correct?
11         A.      Yes.
12         Q.      And if that testimony is
13  inaccurate, would you agree that his failure
14  to properly hook up the trailer is another
15  explanation for the detachment in this case?
16         A.      It would depend when he
17  detaches the vehicle.
18         Q.      Are you still of the opinion
19  that Mr. Mayfield was negligent?
20         A.      Yes.
21         Q.      Okay.  Why was he negligent?
22         A.      Well, he did have the ability,
23  whenever the vehicle -- whenever -- whenever
24  the tow unit, as described by Mr. Mayfield,
```

Frank M. Costanzo

Page 29

1 was loosening, he did have the opportunity
2 of just not using the vehicle.
3    Q.    Anything else?
4    A.    No.
5    Q.    Let's talk about other things
6 Mr. Mayfield could have done that he didn't
7 do. He could have gotten the unit fixed or
8 replaced, correct?
9    A.    That's correct.
10   Q.    And that would have prevented
11 this incident, even if you're right about
12 the defect and the coupler. Correct?
13   A.    Correct.
14   Q.    He could have properly
15 attached the safety chains, correct?
16   A.    I believe the safety chains
17 were properly attached.
18   Q.    If they were properly
19 attached, this incident wouldn't have
20 happened. Agreed?
21   A.    Connected properly, yes. If
22 they were -- if the breakaway chains held
23 tight, then the unit wouldn't have broke
24 free. That's true.

Frank M. Costanzo

Page 30

```
 1      Q.     And do you understand that the
 2 design of the safety chains is to make sure
 3 that you don't get a detachment if the
 4 coupler comes off the ball?
 5      A.     That's correct.
 6      Q.     All right.  So he failed to
 7 properly attach the safety chains, correct?
 8      A.     That's correct.
 9      Q.     And if he had done that, we
10 wouldn't have had this incident.  Correct?
11      A.     Correct.
12      Q.     He failed to properly attach
13 the emergency brake chain, correct?
14      A.     The emergency brake chain
15 activated in the accident.
16      Q.     And came loose.
17      A.     It activated in the accident,
18 so it was attached properly.
19      Q.     And then detached.  Didn't it
20 detach?
21      A.     You're talking about the brake
22 chain?
23      Q.     Yes, sir.
24      A.     The brake chain was activated,
```

Frank M. Costanzo

Page 31

```
 1  so it doesn't matter whether it's detached
 2  or not.  The breakaway chains -- it was
 3  attached to one of the breakaway chains.
 4         Q.     And how do you know it was
 5  attached to one of the breakaway chains?
 6         A.     As he was describing in his
 7  deposition.
 8         Q.     Did you, in your work in this
 9  case, decide to accept the truthfulness and
10  veracity of everything Mr. Mayfield
11  testified to?
12         A.     That's kind of a broad
13  question.  I accepted the facts that he
14  presented in his deposition.  I don't recall
15  every fact that he presented.  We could
16  certainly discuss it.
17         Q.     Do you agree that the
18  testimony of Mr. Rarick and Mr. Mayfield are
19  in conflict?
20         A.     Yes.
21         Q.     For example, Mr. Rarick
22  testified that the trailer would not have
23  left U-Haul premises, U-Haul Florida
24  premises, without it being securely fastened
```

Frank M. Costanzo

Page 78

```
 1  Echevarria's conduct, correct?
 2       A.     No.
 3              MR. LOCOCO:  Okay.  Subject to
 4       follow-up questions based on the
 5       materials you're still going to
 6       provide me, I don't have any further
 7       questions at this time.  Thanks very
 8       much for coming down.  I appreciate
 9       your time.
10              THE WITNESS:  Thank you.
11              MR. LOCOCO:  I should say, for
12       the record, I did give you a check
13       before we started today for $700,
14       which is your retainer for giving
15       testimony.  Correct?
16              THE WITNESS:  Correct.
17              MR. LOCOCO:  Thank you.
18              THE WITNESS:  Do you want
19       color copies?
20              MR. LOCOCO:  Yes, I do want
21       color copies of those photographs,
22       please.
23              MR. LOGULLO:  I don't have any
24       questions.
```

Frank M. Costanzo

Page 79

```
 1              MR. PEARCE:  I have a couple.
 2                   -  -  -
 3                 EXAMINATION
 4                   -  -  -
 5  BY MR. PEARCE:
 6       Q.     With regard to Mr. Mayfield's
 7  negligence, I think what you did say, and
 8  correct me if I'm misunderstanding, that he
 9  had the ability or the opportunity to not
10  use the vehicle once he became aware that
11  the coupler mechanism was coming loose.  Is
12  that -- did I understand it correctly?
13       A.     Yes.
14       Q.     Would you agree that that
15  would mean -- would have to mean that in
16  order for Mr. Mayfield to be negligent, he
17  knew that -- knew or should have known that
18  that problem could result in the trailer
19  detaching from the truck?
20              MR. LOCOCO:  Object to the
21         form.
22              THE WITNESS:  I believe his
23         statement was, he felt the trailer
24         was loosening and he had to keep
```

Frank M. Costanzo

```
 1            tightening down the trailer.  I
 2            think that knowledge would somehow
 3            draw a conclusion that it may detach
 4            somewhere during the movement of the
 5            vehicle, if the trailer hitch is
 6            loosening.
 7 BY MR. PEARCE:
 8            Q.     Do you have any idea as to the
 9 degree in which the coupler was loosening
10 when Mr. Mayfield was tightening it down?
11            A.     No.
12            Q.     What basis do you have that
13 Mr. -- other than what you've already said,
14 that Mr. Mayfield knew or should have known
15 that that problem would lead to the trailer
16 coming loose or detaching?
17            A.     It's just my opinion.
18            Q.     Any other facts you're basing
19 it on?
20            A.     No.
21            Q.     I think you agreed, and
22 correct me if I'm wrong, with one of Mr.
23 LoCoco's statements that Mr. Mayfield could
24 have gotten the coupler repaired when he
```

Frank M. Costanzo

Page 81

```
 1  became aware that it was coming loose.  Did
 2  you agree with that or did you disagree with
 3  that?
 4       A.     I think the question was, did
 5  he have an opportunity to stop and get it
 6  fixed at a local U-Haul, and my answer would
 7  be, I guess he would have the opportunity.
 8       Q.     Did you have an understanding
 9  as to whether or not he called or had the
10  thing looked at by U-Haul?
11       A.     Yes, he did, during the course
12  of his operation, I believe.
13       Q.     And if he did that, would you
14  agree that he would not be negligent in that
15  respect?
16              MR. LOCOCO:  Object to the
17       form.
18              THE WITNESS:  No.
19  BY MR. PEARCE:
20       Q.     You agree with that?
21       A.     Can you repeat the question?
22       Q.     If he did do that, that is,
23  call U-Haul and explain the problem and/or
24  have them look at the problem and they did
```

Frank M. Costanzo

Page 82

1 whatever it is that they did, would you
2 agree that he was not negligent in that
3 respect?
4          A.     Yes.
5          Q.     Are there any other manners in
6 which you believe that Mr. Mayfield was
7 negligent?
8          A.     No.
9                 MR. PEARCE:  Thank you.  I
10         have nothing further.
11                MR. LOCOCO:  I've got a few
12         follow-up questions.
13                     -  -  -
14                RE-EXAMINATION
15                     -  -  -
16 BY MR. LOCOCO:
17         Q.     You said -- I just want to
18 keep entities clear here.  You said it's
19 your understanding that Mr. Mayfield at
20 least testified that he stopped somewhere
21 and had some U-Haul entity look at this
22 coupler.  Correct?
23         A.     That's what he testified to,
24 yes.

Frank M. Costanzo

Page 83

```
 1        Q.      All right.  Do you know
 2 whether it was a dealer, a center?
 3        A.      I'd have to look back on his
 4 deposition.  I don't recall.  I recall him
 5 saying he looked up a U-Haul phone number in
 6 the phone book, so someone who is associated
 7 with U-Haul.  I'm not sure if it was a
 8 service center or where it was located.
 9        Q.      Okay.  So sitting here today,
10 you don't know, even assuming that happened,
11 that he talked to anybody who's a party in
12 this case?
13        A.      That's correct.
14        Q.      Okay.  Do you believe him when
15 he says he stopped?  Are you crediting his
16 testimony that he stopped and had some
17 U-Haul entity look at this coupler?
18        A.      Yes.
19        Q.      So what you're telling us
20 today is that the people at U-Haul in
21 Florida sent out a coupler mechanism that
22 wasn't working properly.  Correct?
23        A.      Correct.
24        Q.      And that people at U-Haul --
```

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SARA S. ECHEVARRIA, ) | |
| ) | |
| Plaintiff, ) | C. A. No. 05-284 (GMS) |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| U-HAUL INTERNATIONAL INC. ) | |
| ROGER MAYFIELD, and ) | |
| NATIONWIDE GENERAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

## ORDER

AND NOW, TO-WIT, this _____ day of _____, 2007, the foregoing Motion in Limine having been presented to and considered by the Court, IT IS HEREBY ORDERED that Defendant Roger Mayfield's motion is GRANTED, and the following portions of the testimony of Frank Costanzo are excluded from these proceedings:

(1) Any testimony indicating that Roger Mayfield was negligent in operating the U-Haul trailer, including testimony that Roger Mayfield did not attach the safety chains or did not attach the safety chains properly;

(2) Any testimony indicating that Roger Mayfield should or could have contacted U-Haul in order to have the trailer repaired or replaced;

(3) Any testimony indicating that Roger Mayfield could or should have not used the trailer.

The Honorable Gregory M. Sleet<br>
United States District Court Judge

## **CERTIFICATE OF SERVICE**

I, Robert K. Pearce, Esquire do hereby certify that on February 1, 2007, I electronically filed the foregoing *Motion in Limine* with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Roger D. Landon, Esq.
Murphy, Spadaro & Landon
1011 Centre Road
Suite 210
Wilmington, DE 19805

Steven L. Caponi, Esq.
Blank Rome LLP
1201 N. Market Street
Suite 800
Wilmington, DE 19801

Robert J. Leoni, Esq.
Morgan, Shelsby & Leoni
221 Main Street
Stanton, DE 19804

Michael James Logullo, Esq.
Morgan, Shelsby & Leoni
221 Main Street
Stanton, DE 19804

I, hereby certify that on February 1, 2007, I have mailed by United States Postal Service, the document to the following non-registered participants:

Frank Lococo, Esquire
Quarles & Brady
411 East Wisconsin Avenue
Milwaukee, WI 53202-4497

/s/Robert K. Pearce
ROBERT K. PEARCE, ESQUIRE
I.D. No. 191

Dated: February 1, 2007