# EXHIBIT C

**Loislaw Federal District Court Opinions**

CANTOR v. PERELMAN, (Del. 11-30-2006)

RONALD CANTOR, IVAN SNYDER and JAMES A. SCARPONE, as TRUSTEES OF THE MAFCO LITIGATION TRUST, and as Successors in Interest to the Marvel Entertainment Group, Inc., et al., Plaintiffs, v. RONALD O. PERELMAN, et al., Defendants.

Civil Action No. 97-586-KAJ.

United States District Court, D. Delaware.

November 30, 2006

Lawrence C. Ashby, Esq., Philip Trainer, Jr., Esq., Tiffany Geyer Lydon, Esq., Ashby & Geddes, Wilmington, Delaware; Counsel for Plaintiffs.

Of Counsel: Edward A. Friedman, Esq., Andrew W. Goldwater, Esq., Daniel B. Rapport, Esq., Jonathan Gottfried, Esq., Friedman Kaplan Seiler & Adelman LLP, New York, NY.

Thomas J. Allingham II, Esq., Anthony W. Clark, Esq., Paul J. Lockwood, Esq., Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware; Counsel for Defendants.

**MEMORANDUM OPINION**

KENT JORDAN, District Judge

**I. INTRODUCTION**

Presently before me are two motions to exclude expert testimony. Defendants, Ronald O. Perelman, Mafco Holdings Inc., MacAndrews & Forbes Holdings Inc., Andrews Group Inc., William C. Bevins, and Donald G. Drapkin (collectively, "Defendants"), filed a Motion to Exclude the Expert Testimony of Bevis Longstreth, William H. Purcell, Andrew S. Carron, Jeffrey L. Baliban, and Portions of the Testimony of Justice Joseph T. Walsh, Ret. (Docket Item ["D.I."] 466.) Plaintiffs, Ronald Cantor, Ivan Snyder, and James A. Scarpone (collectively, "Plaintiffs"), filed a Motion to Exclude the Testimony of Lawrence A. Hamermesh and Certain Opinions of Robert W. Holthausen. (D.I. 470.) Jurisdiction is proper under 28 U.S.C. § 1334. For the reasons that follow, both Motions will be granted in part and denied in part.

**II. BACKGROUND**[fn1]

Plaintiffs are the trustees of the MAFCO Litigation Trust, which was created according to the plan of reorganization in the bankruptcy cases of Marvel Entertainment Group, Inc. ("Marvel") and its affiliates, in order to pursue Marvel's claims against Defendants. (D.I. 471 at 7; see also D.I. 467 at 1.) Defendant Ronald O. Perelman ("Perelman") was the controlling shareholder and Chairman of the Board of Marvel. (D.I. 471 at 7.) Perelman's

controlling share of Marvel stock was held by a chain of corporations wholly-owned by Perelman (the "Marvel Holding Companies"). (Id.) The other individual defendants, William C. Bevins and Donald G. Drapkin, served as directors of Marvel and, along with Perelman, comprised the entire board of directors of

Page 2

each of the Marvel Holding Companies. (D.I. 469 at A182; see also D.I. 471 at 7.)

In 1993 and 1994, Defendants caused the Marvel Holding Companies to issue three tranches of notes (the "Notes"), which raised $553.5 million. (D.I. 471 at 8.) The Notes were secured by pledges of the Marvel stock held by the Marvel Holding Companies. (D.I. 467 at 1.) In the Notes, the Marvel Holding Companies promised to prevent Marvel from engaging in certain forms of corporate financing (the "Restrictions"). (D.I. 471 at 8.) The Restrictions prohibited Marvel from issuing certain types of debt unless specific financial ratios were met, from issuing any preferred stock except under specified circumstances, and from diluting Perelman's majority share of Marvel voting stock. (D.I. 469 at A110-11; see also D.I. 467 at 1.) Plaintiffs allege that Defendants breached their fiduciary duties by including those Restrictions in the Notes and by using Marvel's corporate resources to sell the Notes. (D.I. 471 at 8.)

Plaintiffs filed their complaint on October 30, 1997. (D.I. 1.) The case was subsequently referred to Magistrate Judge Mary Pat Thynge. (D.I. 262.) Judge Thynge issued a report in the form of a Memorandum and Order on December 9, 2002, recommending that summary judgment for Plaintiffs be denied and that summary judgment for Defendants be granted in part. (D.I. 467 at 1; D.I. 384.) On February 18, 2004, I adopted Judge Thynge's report in all respects. (D.I. 467 at 1; D.I. 404.) On July 12, 2005, the United States Court of Appeals for the Third Circuit reversed the grant of summary judgment for Defendants with respect to the unjust enrichment claims and some of the damage claims, affirmed the denial of summary judgment for Plaintiffs, and remanded the case for further proceedings. Cantor v. Perelman, 414 F.3d 430, 442 (3d Cir. 2005). In accordance with the decision of the Third Circuit, I ordered the parties to

Page 3

identify any additional expert testimony on or before January 13, 2006, and to file any objections to such testimony no later than June 1, 2006. (D.I. 430 at 1-2.)

### III. STANDARD OF REVIEW

Motions to exclude expert testimony are committed to the court's discretion. See Jaasma v. Shell Oil Co., 412 F.3d 501, 513 (3d Cir. 2005) (holding that the decision to admit or reject expert testimony is reviewed under an "abuse of discretion" standard). To be considered an abuse of discretion, the court's decision must be "arbitrary, fanciful, or clearly unreasonable." Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 412 (3d Cir. 2002).

### IV. DISCUSSION

Federal Rule of Evidence 702 provides that "if scientific, technical, or other specialized knowledge will assist the trier

of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Rule 702 obligates judges to ensure that all expert testimony is relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). An expert must explain how and why he or she has reached the conclusion being proffered and must have as a basis more than a subjective belief or speculation. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997) (noting failure of respondent to explain "how and why the experts could have extrapolated their

Page 4

opinions"); *cf. Kumho Tire*, 526 U.S. at 152 (an expert must employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993) (expert testimony "must be supported by appropriate validation"). The court "must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999). Further, Rule 702 requires that expert testimony assist the trier of fact. In other words, it must "fit" the issues in the case by having a valid connection to the pertinent inquiry. *Daubert*, 509 U.S. at 591-92.

   A. Proposed Testimony of Professor Lawrence A. Hamermesh and Justice Joseph T. Walsh, Ret.

   Plaintiffs argue that the expert report of Professor Lawrence A. Hamermesh should be excluded because it merely provides his interpretation of Delaware corporate law. (D.I. 471 at 15-16.) Similarly, Defendants seek to exclude some of the testimony of Justice Joseph T. Walsh, Retired, on the grounds that it constitutes an impermissible legal opinion. (D.I. 467 at 10.) While Plaintiffs apparently concede that the testimony of both experts should either be admitted or excluded in their entirety (D.I. 478 at 25), Defendants attempt to distinguish the opinions offered by Professor Hamermesh and Justice Walsh (D.I. 467 at 11-13). Defendants contend that Professor Hamermesh only discusses whether Delaware law would permit the Marvel board of directors to dilute the position of a majority shareholder, whereas Justice Walsh also opines on whether Defendants breached their fiduciary duties. (*Id.* at 12.) Defendants claim that Professor Hamermesh's opinion is admissible because he addresses an issue of law

Page 5

that serves as a "fact" in this case. (*Id.*) On appeal, the Third Circuit held that Plaintiffs "should at least have the opportunity to establish through expert testimony what the defendants would have had to pay Marvel, after arm's length bargaining, for the restrictions defendants secured without compensation." *Cantor*, 414 F.3d at 437. Defendants assert that **Professor Hamermesh's legal opinion is a "fact"** because it is necessary to construct the hypothetical bargaining described by the Third Circuit. (D.I. 467 at 12.) Defendants contend that, in

analyzing the cost of a restriction that would prevent Marvel from diluting a majority shareholder, the board would have considered whether, even without that restriction, it would have been permitted under Delaware law to dilute a majority shareholder. (*Id.*) For that reason, one of Defendants' other experts, Peter A. Fowler, relies on Professor Hamermesh's opinion in assessing the outcome of the hypothetical bargaining process. (D.I. 469 at A120, ¶ 24.) Therefore, Defendants propose that both Professor Hamermesh and Justice Walsh should be permitted to testify as to the ability of a board of directors to dilute a majority shareholder, but not as to the law that governs Defendants' fiduciary duties. (D.I. 467 at 13.)

Each party appears to admit that their own expert offers a legal opinion regarding the proper interpretation of Delaware corporate law. (*Id.* at 12 (Defendants arguing that "Hamermesh's legal opinion is needed in order to construct the hypothetical bargaining"); D.I. 478 at 25 (Plaintiffs explaining that "Hamermesh and Walsh do have a significant disagreement concerning the proper interpretation of Delaware law").) The expert reports submitted by Professor Hamermesh and Justice Walsh confirm that they indeed focus on issues of law. Professor Hamermesh's report reviews the relevant

Page 6

case law (D.I. 469 at A170-72, ¶¶ 6-9), and concludes that "the practice and effect of Delaware corporate law as of the period from 1993 to 1996 largely duplicated the indirect effect of Section 4.09(a) of the indentures limiting Marvel's ability to issue shares to reduce the Marvel Holding Companies' ownership of Marvel voting stock to less than a majority" (*id.* at A172, ¶ 10). Justice Walsh also conducted an analysis of Delaware case law (*id.* at A279-84, ¶¶ 9-18), but reached a different conclusion, namely that "where . . . directors are motivated not by an intention to dilute control but by the desire to protect the interests of the corporation and its minority shareholders, they could properly cause the issuance of additional equity even if that issuance had the effect of diluting majority control" (*id.* at A283, ¶ 16). The Third Circuit has specifically instructed the district courts to "ensure that an expert does not testify as to the governing law of the case." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). Since that is precisely the character of the proposed testimony of Professor Hamermesh and Justice Walsh, it cannot be admitted.

Part of the Third Circuit's holding in *Berckeley* is based on concern that an expert not "usurp the District Court's pivotal role in explaining the law to the jury." 455 F.3d at 217. But jury confusion is not the only rationale for the rule. The point of Rule 702 is to allow evidence that will assist the fact finder. Despite the outstanding qualifications of both Justice Walsh and Professor Hamermesh, I will not be assisted in my role as fact finder in this bench trial by hearing the law explained from the witness stand. The able attorneys on both sides of this case can articulate the law in their arguments and post-trial briefing. This is simply not a case where the weight to be given proposed expert testimony is in question and hence determining admissibility might usefully be delayed.

Page 7

Cf. *Chase Manhattan Mortgage Corp. v. Advanta Corp.*, C.A. No. 01-507-KAJ, 2004 WL 422681 at *9-10 (D. Del. Mar. 4, 2004)

(denying motion to exclude expert testimony in a bench trial so that judgment on the weight, if any, to be given to that testimony could be made on a more complete record). There is no benefit to delaying decision on admissibility here.

Defendants have failed to establish that the general rule prohibiting experts from offering legal opinions should not be applied to Professor Hamermesh. In support of their argument that his testimony serves as a "fact" in this case, Defendants cite to *Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1997), for the proposition that "[l]awyers may testify as to legal matters when those matters involve questions of fact." (D.I. 467 at 12.) However, Defendants' reliance on *Askanase* is misplaced. In explaining what it meant by the phrase "questions of fact," the Fifth Circuit gave the example of a lawyer who was permitted to testify that the language in a boilerplate contract was standard. *Askanase*, 130 F.3d at 673. That example does not support Defendants' position that, in some circumstances, a lawyer can testify as to his interpretation of the law involved in the case. In contrast, the Fifth Circuit actually cautions that "if an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position." *Id*. That is exactly what the parties have done here.

Defendants also claim that the "law as fact" exception is demonstrated by decisions of the Delaware Court of Chancery that permitted experts to testify as to the likely outcome of related litigation. (D.I. 475 at 19-20 (citing *Onti, Inc. v. Integra Bank*,
Page 8
751 A.2d 904, 931-32 (Del.Ch. 1999)); D.I. 481 at 19 (citing *In re The Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 743 (Del. Ch. 2005)).) Again, Defendants' argument is unpersuasive. The Chancery Court did not allow experts to simply explain the law. Rather, the experts offered opinions about likely outcomes based on factual assumptions. *See, e.g., In re The Walt Disney Co. Derivative Litig.*, 907 A.2d at 744. That type of expert testimony is akin to that of Defendants' expert Peter A. Fowler, who explains how the law would affect the outcome of a hypothetical negotiation between Defendants and the Marvel board of directors. (D.I. 469 at A120-21, ¶ 24; *id*. at A138-39.) Despite Defendants' contentions, Fowler can explain, without Professor Hamermesh's legal opinion, how any limit that Delaware law places on the ability of a board to dilute a majority shareholder would play a role in the negotiations. I will decide whether any such limitation actually exists under Delaware law. Accordingly, I will grant Plaintiffs' Motion to exclude the testimony of Professor Hamermesh, and I will grant Defendants' Motion to exclude the testimony of Justice Walsh.[fn2]

B. Proposed Testimony of Robert W. Halthausen

Plaintiffs assert that the opinion offered by Robert W. Halthausen for Defendants on the issue of damages should be excluded because it is not relevant. (D.I. 471 at 19-20.) According to Plaintiffs, Halthausen calculated damages based on the expected costs of Marvel's financial distress at the time the Notes were issued. (*Id*. at 21.) Plaintiffs contend that, in this case, damages should include any injuries that occurred

Page 9
subsequent to the issuance of the Notes. (*Id.* at 22.) More specifically, Plaintiffs believe that damages should be measured by the difference between the financial distress actually sustained by Marvel and that which it would have sustained "but for" Defendants' breach of fiduciary duty. (*Id.*)

Regardless of whether Plaintiffs' proposed method of calculating damages is appropriate in this case, their theory depends on a finding that Marvel's subsequent financial distress was proximately caused by Defendants' conduct. (*Id.* at 24 ("as long as the harm that Marvel sustained was proximately caused by the Indenture Covenants, its recovery is not limited by the extent to which such injury was `expected' at the time that the defendants breached their duties").) In the course of arguing that the testimony of their own damages expert, William H. Purcell (*see infra* at 18-20), should be admitted, Plaintiffs stated that, "[t]o the extent defendants believe that there was some superseding or intervening cause why Marvel's equity became worthless, they can present evidence or cross-examine Purcell." (D.I. 478 at 12 n. 5.) Since Plaintiffs admit that their theory of damages is dependent on proof of causation and that causation is an issue for trial, it would be inappropriate for me decide, at this stage in the proceedings, to apply their measure of damages and reject Defendants' approach. Accordingly, I will deny Plaintiff's Motion to exclude the testimony of Halthausen.

C. Proposed Testimony of Bevis Longstreth

Defendants move to exclude the testimony of Bevis Longstreth on several grounds. First, Defendants contend that portions of Longstreth's initial expert report are inadmissible legal opinions. (D.I. 467 at 15.) In his initial report, Longstreth purported to answer eight questions submitted by Plaintiffs' counsel (D.I. 469 at A181, A205-07),
Page 10
and Defendants claim that his answers to five of those questions should not be admitted (D.I. 467 at 15-16). Defendants' position is that Longstreth attempted "to dress up legal conclusions as facts." (*Id.* at 19.) In response, Plaintiffs argue that Longstreth provided permissible testimony regarding the customs and practices of the directors of a Delaware corporation. (D.I. 478 at 21.)

Plaintiffs have identified a proper, if somewhat subtle and occasionally difficult, distinction. While a witness cannot testify as to the law governing a case, expert testimony concerning business customs and practices is allowed. *United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991). However, given that the present case involves allegations that Defendants breached their fiduciary duties, it is important to note that "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." *Berckeley*, 455 F.3d at 218.

In general, the portions of Longstreth's initial report that are being challenged by Defendants discuss the process by which a company such as Marvel would handle a transaction involving an

interested director. (*See id.* at A181-85, A187.) This is permissible testimony concerning the business customs and practices of a corporation. On at least one occasion, though, Longstreth comes too close to offering a legal opinion. For example, he states that, "[a]s an independent director, it would be obvious to me that Perelman could not be expected to discharge his fiduciary duty to Marvel as both its controlling shareholder and as a director, while at the same time seeking to restrict Marvel's ability to conduct its affairs in order to sell the Notes and secure the net

Page 11

proceeds therefrom for himself personally, without any benefit to Marvel." (*Id.* at A184.) Testimony as to a breach of fiduciary duty will not be admitted. Nevertheless, Longstreth's initial report is still distinguishable from those submitted by Professor Hamermesh and Justice Walsh, which more plainly consist of legal opinions. Because this is a bench trial and I will not be influenced by a witness' view of the law, I will not exclude large portions of Longstreth's otherwise admissible testimony on the basis that a few statements in his initial report may address issues of law. I will rely on counsel for Defendants to renew their objection, if Longstreth's testimony at trial strays into the realm of purely legal opinion.

Defendants argue that even the portions of Longstreth's initial report that focus on business customs and practices should be excluded because the customs and practices of directors of Delaware corporations are defined by Delaware law. (D.I. 481 at 9.) This is certainly one of those instances where the line between admissible and inadmissible testimony may be difficult to determine. Nevertheless, and contrary to Defendants' assertion, the Third Circuit has held that it is permissible for an expert to testify, based on experience in the industry, as to how a company would operate under the law so long as "the expert . . . [does] not give his opinion as to what was required under the law, or whether the defendant complied with the . . . [law]." *Berckeley,* 455 F.3d at 218 (citing *Leo,* 941 F.2d at 197). Defendants claim that some of the customs and practices discussed in Longstreth's initial report are extremely similar to the requirements of Delaware corporate law. (D.I. 467 at 16-18.) However, Defendants have failed to identify any part of Longstreth's report in which he states that those customs and practices are required by law. That is a distinction with a meaningful

Page 12

difference, particularly where, as here, trial is to the bench and there is no risk of jury confusion. Indeed, the case law cited by Defendants is persuasive on this point. Defendants note that, in *In re The Walt Disney Derivative Litigation,* the Delaware Chancery Court acknowledged that an expert had simply couched an opinion about alleged breaches of fiduciary duties in terms of custom and practice. (D.I. 481 at 9 (citing *In re The Walt Disney Co. Derivative Litig.,* 907 A.2d at 740-41).) The Chancery Court therefore recognized what was less than helpful in the expert's opinion, even though the testimony was admitted at trial. *In re The Walt Disney Co. Derivative Litig.,* 907 A.2d at 740-41. Likewise in this case, Defendants raise an issue of weight, not admissibility.[fn3]

Defendants' next argument is that Longstreth's initial and

rebuttal reports should be excluded under *Daubert v. Merrel Dow Pharms., Inc.*, 509 U.S. 579 (1993), because they are unreliable. (D.I. 467 at 21-22.) With respect to his initial report, Defendants claim that Longstreth provides no "objective, analytical process or methodology" to support his opinions. (*Id.* at 22.) Yet, the only specific deficiency identified by Defendants in their opening brief is that Longstreth fails to explain why the Restrictions would create a "bet the ranch" situation that, "depending on future events that . . . could not reasonably [be] anticipate[d], might so restrict Marvel as to cause its demise." (*Id.* (quoting D.I. 469 at A186).) As would be expected, in their brief opposing Defendants'

Page 13

Motion, Plaintiffs explain the basis for that particular portion of Longstreth's report. (D.I. 478 at 14-16.) Defendants then respond by accusing Plaintiffs of focusing "on a snippet of his opinion that has at least some framework to it" (D.I. 481 at 5), an odd criticism since Plaintiffs were dealing with the snippet selected by Defendants. Defendants admit that, "[w]ere this the full extent of Longstreth's opinion, . . . [they] would not have made this motion because, on this small point only, Longstreth has explained the basis for his conclusion, and cross-examination is, therefore, readily available." (*Id.*) Since that "small point" is the only part of Longstreth's initial report that Defendants address in any detail, their argument essentially consists of their conclusory assertion that "the remainder of his analysis, and his conclusion, are either speculative and unreliable or legal opinions." (*Id.*) I will not exclude Longstreth's initial report based on such a general allegation.

Defendants also contend that Longstreth's rebuttal report, which critiques Fowler's analysis of the hypothetical negotiation, is unreliable because it is based on Longstreth's *ipse dixit* assertions. (D.I. 467 at 22.) Again, Defendants have selected a small portion of his report and claim that it is unsupported. Defendants focus on the following statement from Longstreth's rebuttal report: "As to benefits, the wealth extraction from Marvel accrued solely to the benefit of Ronald O. Perelman. Nothing of benefit accrued to Marvel or its minority shareholders." (*Id.* at 23 (citing D.I. 469 at A210).) Since Plaintiffs' counsel informed Longstreth that the Marvel Holding Companies, which are owned by Perelman, received the entire $553.5 million from the Notes (D.I. 469 at A203), I do not find this statement to be so unreliable as to warrant

Page 14

excluding testimony based upon Longstreth's rebuttal report.[fn4] Defendants also argue that Longstreth's rebuttal opinion is unreliable because he failed to address Fowler's analysis of the financial alternatives to issuing the Notes. (D.I. 467 at 23.) However, Defendants have not established that, for a rebuttal expert's testimony to be admissible, it must address every factor taken into account by the opposing expert. Thus, if Longstreth did in fact fail to consider the alternatives set forth in Fowler's report, it is not an issue of admissibility, but one of the weight that should be given to Longstreth's opinion.

I now turn to Defendants' more general proposition that both of Longstreth's reports are unreliable because they are supported only by his personal experience. (*Id.* at 24-25; D.I. 481 at 8.) Defendants contend that expert testimony is routinely excluded

when it is based entirely on experience and judgment, and not an identifiable methodology. (D.I. 467 at 24-25; D.I. 481 at 8.) However, no such bright line rule exists. To the contrary, the Supreme Court has acknowledged that experts may base their testimony upon personal experience. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (explaining that the purpose of *Daubert* "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"). Particularly telling is the Advisory Committee's explanation of the 2000 Amendment to Rule 702:
Page 15

> Nothing in this amendment is intended to suggest that experience alone — or experience in conjunction with other knowledge, skill, training or education — may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.

Fed.R.Evid. 702 advisory committee's note. Accordingly, Longstreth's experience as a corporate lawyer and his service on several boards of directors (D.I. 469 at A180) can form the basis for reliable expert testimony in this case.

Defendants also argue that Longstreth's experience-based opinions are unreliable because they do not satisfy any of the Third Circuit's modified *Daubert* factors. (D.I. 467 at 26.) However, Defendants' reading of the law is stricter than required. The Supreme Court explained that the *Daubert* factors are "meant to be helpful, not definitive." *Kumho Tire*, 526 U.S. at 151. Similarly, the Third Circuit has recognized that while the general requirement of reliability set forth in *Daubert* applies to all expert testimony, the "list of specific factors would often be of little use in evaluating non-scientific expert testimony." *United States v. Davis*, 397 F.3d 173, 178 (3d Cir. 2005).

To support their position, Defendants point to several cases in which experience-based testimony was excluded as unreliable. (D.I. 467 at 26; D.I. 481 at 8.) That case law highlights a critical distinction. In *Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir. 2000), a case cited by Defendants, an engineer offered his expert opinion that the front bumper of a particular truck would have been able to sustain the impact of a guardrail if it had been strengthened with either bracketry or wedge supports. *Id.* at 158. The
Page 16
opinion was excluded because the expert "conducted no tests" and used "little, if any, methodology beyond his own intuition." *Id.* An important basis for that conclusion is that vehicle design is a testable hypothesis that can be demonstrated using an identifiable methodology. *See id.* (explaining that the expert could have, but did not, test the vehicle design under accident conditions or calculate the forces that could have been sustained by the truck bumper and guardrail at impact). In fact, the Third

Circuit noted that "[a]lthough there may be some circumstances where one's training and experience will provide an adequate foundation to admit an opinion and furnish the necessary reliability to allow a jury to consider it, this is not such a case." *Id.*

An illustration of that distinction is *Berckeley*, in which the Third Circuit held that a former corporate lawyer could testify as to business customs and practices in the securities industry, based on her experience as counsel for the SEC. 455 F.3d at 218; see also *Davis*, 397 F.3d at 179 (holding that a police officer's opinion concerning the methods of operation of drug traffickers was sufficiently reliable based solely on his years of experience). Longstreth's opinion on the customs and practices of corporate directors is similar to the experienced-based testimony that the Third Circuit has approved, because the opinions expressed are not subject to proof by a particular methodology.

Although Defendants have failed to establish that I should entirely exclude Longstreth's testimony, they have identified another portion of that proposed testimony with which I do have concern. After critiquing Fowler's analysis of the hypothetical negotiation, Longstreth opined that "the fee suggested by Mr. Fowler would have been

Page 17

flatly unacceptable to Marvel," and that "the consideration that Marvel would have required would likely have been in the order of magnitude of $150 million." (D.I. 469 at A212.) Other than his opinion that, given the risks to Marvel, Fowler's proposed fee was too low, Longstreth offers no basis for his conclusion that $150 million would be an appropriate amount. (*Id.*) In fact, Longstreth admitted that it was a "ballpark judgment." (*Id.* at A312, 150:13-18.) Since I can discern no other grounds for the particular figure submitted by Longstreth, I have serious concerns about its reliability. On balance, however, I am persuaded that, in the particular circumstances of this bench trial, the testimony need not be excluded at this time.[fn5]

Finally, Defendants claim that Longstreth is not qualified to offer an opinion about the outcome of the hypothetical negotiation. (D.I. 467 at 28.) Defendants base their argument on what they believe to be an admission by Longstreth that he lacks the financial expertise to conduct such a financially complex negotiation. (*Id.*) But there is no such admission. When asked whether he would be a suitable candidate for the board to hire as a financial advisor on the negotiation, Longstreth explained that he would not, but only because he would be providing the legal advice, and he felt that the board should hire an independent financial expert. (D.I. 469 at A306, 32:14-23.) Longstreth never stated that he lacked the financial expertise necessary to assess the outcome of the hypothetical negotiation. Rather, Longstreth explained that, based on his experience giving both legal and financial advice, he is an expert in analyzing the

Page 18

"structures of a financing transaction." (*Id.* at A306, 32:2-13.) Therefore, Defendants have failed to demonstrate that Longstreth was unqualified to discuss the financial aspects of the hypothetical bargaining process. Accordingly, since I do not find any of Defendants arguments to be persuasive, I will deny Defendants' Motion to exclude Longstreth's testimony.

D. Proposed Testimony of William H. Purcell

Defendants seek to exclude testimony based upon the three expert reports of William H. Purcell, on the ground that his opinions are based entirely on experience and not on any particular methodology or objective criteria. (D.I. 467 at 28-29.) As previously discussed, merely asserting that an expert relied on personal experience in forming an opinion is insufficient to demonstrate that the opinion is inadmissible. (See supra at 14-16.) Since Defendants provide no further explanation as to why Purcell's initial expert report is unreliable, I will not exclude that report.

Defendants claim that Purcell's rebuttal report is inadmissible because he fails to provide an adequate basis for his opinion that, "*based on my experience as an investment banker*, the target capital structure for a company such as Marvel would have been no more than 30% debt and at least 70% equity." (D.I. 467 at 29 (emphasis added by Defendants).) Defendants allege that Purcell simply "made up" that ratio, and it is inadmissible because it is not based on a "testable hypothesis" or "standards controlling the technique's operations." (Id. at 30-31.) However, Purcell's assessment of Marvel's likely capital structure in the absence of the Restrictions is supported by
**Page 19**
several principles of corporate finance set forth in his rebuttal report. (D.I. 469 at A254-55.)

In particular, Purcell's opinion rests on the principles that "it is best to finance long-term assets with long-term debt or equity," that "it is best to stretch out one's debt maturity schedule over as long a period of time as possible," and that "one should avoid over-reliance on short-term commercial paper or commercial bank debt." (Id.) Thus, though one may attack the soundness or applicability of the principles cited, it is not accurate to say Purcell provided an inadequate basis for his conclusion that Marvel should have had a higher percentage of equity than debt. Defendants also point out that Purcell admitted that the actual ratio "is an order of magnitude judgment." (Id. at A315, 125:15-25.) However, I will not exclude Purcell's testimony solely because he failed to explain how he determined that exact ratio. It is clear from Purcell's report that the ratio of 30% debt to 70% equity is an experience-based estimate given for purposes of comparison with Marvel's actual debt-to-equity ratio. (See id. at A259.)

Finally, Defendants argue that the measure of damages in Purcell's supplemental report should be excluded because it is simplistic and lacks the methodological rigor required by Daubert. (D.I. 467 at 32.) Critical to Purcell's damages calculation was that on November 12, 1996, a corporation wholly-owned by Perelman refused to invest funds in Marvel unless the Restrictions in the Notes could be amended. (D.I. 469 at A275.) Purcell calculated damages by multiplying the price that the common shares of Marvel closed at on November 11, 1996, the day before Perelman's announcement, by the number of outstanding shares prior to Marvel's bankruptcy petition in late December 1996. (Id.) Defendants criticize this calculation
**Page 20**

because it assumes that the drop in stock price and eventual bankruptcy is due entirely to the Restrictions, and, thus, it fails to account for other possible causes. (D.I. 467 at 32.) While Defendants may disagree with Purcell's method, they have not shown that it is so unsustainable as to render his testimony inadmissible. Again, the argument more properly goes to the weight of Purcell's opinion, not its admissibility. Accordingly, I will deny Defendants' Motion to exclude the testimony of Purcell.

E. Proposed Testimony of Andrew S. Carron and Jeffrey L. Baliban

Defendants move to exclude testimony based upon the expert reports of Andrew S. Carron and Jeffrey L. Baliban on the grounds that those reports were not timely submitted. (D.I. 467 at 34.) Defendants contend that, based on Plaintiffs' representations during a teleconference on September 9, 2005, the Scheduling Order (D.I. 430) of October 18, 2005 that allowed the parties to submit additional expert testimony was limited to testimony which addresses the issue of "what the defendants would have had to pay Marvel, after arm's length bargaining, for the restrictions defendants secured without compensation." (D.I. 467 at 34.) Thus, Defendants claim that because Carron and Baliban do not address that narrow issue, their reports are governed by the Scheduling Order of February 6, 2002 which required all expert testimony to be submitted by April 10, 2002. (*Id.* at 35.) Defendants argue that admitting the reports at this time would be prejudicial because they raise new theories of liability and remedy, and Defendants will not be able to make summary judgment motions on those issues. (D.I. 481 at 15.)
Page 21

Defendants have failed to establish prejudice that would justify excluding the reports submitted by Carron and Baliban. Both reports were served by the deadline of January 13, 2006 for submitting additional expert testimony (*see* D.I. 459), as set forth in the Scheduling Order of October 18, 2006 (D.I. 430). In response, Defendants served rebuttal expert reports with respect to both Carron and Baliban. (D.I. 469 at A111; D.I. 472 at Ex. 7, ¶ 2.) Defendants apparently also had the chance to depose Carron on April 7, 2006 (*see* D.I. 479 at B373) and Baliban on April 11, 2006 (*see* D.I. 469 at A297). Therefore, since Defendants have had a sufficient opportunity to address any issues raised in the expert reports of Carron and Baliban, I will deny Defendants' Motion to exclude those reports.

V. CONCLUSION

Accordingly, I will grant Plaintiffs' Motion to exclude the testimony of Professor Lawrence A. Hamermesh, and I will deny Plaintiffs' Motion in all other respects. I will grant Defendants' Motion to exclude the testimony of Justice Joseph T. Walsh, Retired, and I will grant Defendants' Motion to the limited extent that proposed testimony by Bevis Longstreth as to breaches of fiduciary duty will not be permitted at trial. In all other respects, however, I will deny Defendants' Motion. An appropriate order will follow.

[fn1] The following background information is taken from the parties'

submissions and does not constitute findings of fact.

[fn2] Even though Defendants only moved to exclude portions of Justice Walsh's testimony (D.I. 467 at 13), Plaintiffs concede that the opinions of Professor Hamermesh and Justice Walsh cannot be distinguished (D.I. 478 at 25). Therefore, both will be excluded in their entirety.

[fn3] In the course of arguing that Longstreth's initial report contains inadmissible legal opinions, Defendants also assert that parts of his report are not relevant to the hypothetical negotiation that the Third Circuit permitted Plaintiffs to address on remand. (D.I. 467 at 19-20.) As discussed below, I will not exclude expert testimony for that reason. (*See infra* at 20-21.)

[fn4] I emphasize that I relate here only what I understand to be a factual assumption upon which Longstreth was relying; I am not stating any factual or legal conclusion of my own.

[fn5] Plaintiffs should be aware that they will not be permitted to establish a basis for Longstreth's opinion at trial unless they complied with the disclosure requirements of Fed.R.Civ.P. 26.

Copyright © 2007 Loislaw.com, Inc. All Rights Reserved