**Murphy & Landon**

ATTORNEYS

1011 CENTRE ROAD, SUITE 210

WILMINGTON, DELAWARE 19805

PHONE 302.472.8100

FAX 302.472.8135

ROGER D. LANDON
DIRECT DIAL: (302) 472-8112

February 23, 2007

The Honorable Gregory M. Sleet
United States District Court
844 N. King Street
Lock Box 19
Wilmington, DE 19801

**Re:** ***Sara S. Echevarria v. U-HAUL Co. of Florida, et al.***
**United States District Court, District of Delaware, No. 05-284 GMS**
**MS&L File No. 06-0227**

Dear Judge Sleet:

My client, Sara Echevarria, contends that her underinsured motorist carrier (Nationwide Mutual Insurance Company) is bound by the default entered against Mayfield. In other words, since Mayfield's liability to the plaintiff has been determined by the default, Nationwide is not entitled to re-litigate that issue. U-Haul Co. of Florida agrees with the plaintiff's position. Nationwide disagrees arguing that because it has defended itself and asserted in its Answer that Mayfield was not negligent, the plaintiff still has to prove Mayfield's negligence in order to trigger Nationwide's contractual obligation to pay underinsured motorist benefits assuming plaintiff's damages as determined by the jury exceed Mayfield's liability limits of $15,000.

The Delaware Supreme Court had to consider a similar, though not precisely the same, issue in *Sutch v. State Farm Mut. Auto. Ins. Co.*, Del. Supr., 672 A.2d 17 (1995) (copy attached). In *Sutch* the plaintiff argued that State Farm was collaterally estopped from re-litigating the issue of liability of the underinsured motorist when State Farm had full notice and opportunity to intervene in the plaintiff's case against the underinsured motorist and did not do so. The Supreme Court held that State Farm was bound by the Superior Court judgment. In deciding against State Farm, the Court reviewed case law from other jurisdictions which addressed the issue of whether an insurer is bound by a default judgment taken against a tortfeasor. The Court noted that:

> "... those courts have concluded that the UM/UIM statutes do not mandate that an insurer be bound by a default judgment against the tortfeasor in all circumstances. Instead, those courts have held that the insurer will be bound by the default judgment only where the insurer 'had full notice and adequate opportunity to

> intervene and present any defenses and arguments necessary to protect its position.' *Champion Ins. Co. v. Denney*, Ala. Supr., 555 So.2d 137, 139 (1989)."

*Sutch* at p.21.

The question then becomes when the underinsured motorist carrier is a party to the lawsuit and files an Answer, as Nationwide did in Echevarria's case denying Mayfield's liability, whether that preserves Nationwide's liability defense in the face of a default by Mayfield. That question can be answered by reference to the Uninsured Motorists Endorsement in the policy sold to Echevarria by Nationwide (copy attached). Specifically, the coverage agreement of the Uninsured Motorist Endorsement provides, in pertinent part:

> "**We** will pay damages, ... , which are due by law to **you** ... from the ... driver of an **uninsured motor vehicle** because of **bodily injury** suffered by **you** ... ".

Under the **DEFINITIONS** section of the endorsement, "**uninsured motor vehicle**" is defined to include:

> "One which is underinsured. This is a **motor vehicle** for which bodily injury liability coverage or other security or bonds are in effect; however, their total amount is less than the limits of this coverage."

Thus, Nationwide contracted with Echevarria to pay her damages "which are due by law to [her] from the driver of an [underinsured] motor vehicle." Because Mayfield has defaulted, he will be legally liable to pay damages to the plaintiff. All that remains is for the jury to decide the amount of those damages. Once that decision has been made, Nationwide, by contract, has agreed to pay those damages which will be "due by law to [her] from [Mayfield]" to the extent they exceed Mayfield's liability coverage.

Nationwide will undoubtedly argue that it is unfair for the Court to hold Nationwide liable when it could arguably advance a defense on the merits to Mayfield's liability. However, the fact is that many uninsured and even underinsured motorists don't have much of an interest in defending themselves in cases where the damages exceed their coverage and, in particular, when they know that the plaintiff has underinsured motorist coverage. Insurance companies know that when they write UM/UIM coverage. The coverage is mandatory under Delaware law in the sense that it has to be offered to everyone buying liability coverage. Of course, the insured is free to reject the coverage if she so wishes. When this coverage is purchased, the auto insurers know that one of the inherent risks of this coverage is the risk that the uninsured or underinsured motorist will not defend himself. Isn't it likely that the carriers factor in this risk when setting premiums?

The only other Delaware case we have been able to locate touching on this issue is the opinion of Judge Graves from the Sussex County Superior Court in *Daw v. Townsend*, 1992 WL 354223 (Del. Super.) (copy attached). *Daw* is of questionable value given that it is an unreported Superior Court opinion decided prior to *Sutch*. In that case, Daw, a Maryland resident, was

involved in an accident in Sussex County apparently caused by Townsend. Townsend was not insured. Daw had uninsured motorist coverage with State Farm. Applying Delaware procedural law, the Court had to decide whether or not a default judgment obtained against Townsend is *res judicata* as to the uninsured motorist carrier in a situation where the uninsured motorist carrier was a party to the suit and had filed an Answer defending itself. The uninsured motorist Townsend defaulted and there was an inquisition hearing held. State Farm did not attend the hearing. At the hearing, damages were set at $125,000 against Townsend. The plaintiff moved for summary judgment against State Farm but the Court denied the motion.

The *Daw* case is distinguishable from the *Echevarria* case. Although it is not entirely clear from reading the brief opinion, it appears that State Farm did not contest the fact that Townsend was negligent. Rather, the liability issue was whether Daw was comparatively negligent in excess of 50% so as to bar her claim. It also does not appear that State Farm was defending on damages since it only had a $25,000 uninsured policy and the Court found the damages worth $125,000. Rather, it appears State Farm wanted its day in court to argue comparative negligence. Since comparative negligence was not determined by the default against Townsend, it makes sense that the Court would deny the summary judgment motion and allow State Farm to have its day in court to argue comparative negligence.

In Echevarria's case, Nationwide is not arguing any comparative negligence on the part of Echevarria. The only "liability" issue which Nationwide is concerned with is whether Mayfield was actually negligent. Because Mayfield's negligence has been determined by the Court by virtue of the default and because a defaulting underinsured motorist is one of the risks anticipated in selling this type of insurance coverage, Nationwide should be bound by the default against Mayfield.

Additionally, as a practical matter, it is almost unworkable to ask the jury in this case to make an award of damages against Mayfield who has already been found liable and then also determine whether or not Mayfield is liable for purposes of the claim against Nationwide. There is a logical inconsistency in asking the jury to do that which creates great potential for confusion. How can a jury be asked to find a defendant factually not negligent when his liability has already been determined by the Court as a matter of law?

Respectfully,

/s/ Roger D. Landon

Roger D. Landon

RDL/dmw

cc: Chase T. Brockstedt, Esq.
Francis H. LoCoco, Esq.
Robert K. Pearce, Esq.
Robert J. Leoni, Esq.
Steven Caponi, Esq.

00139934



# *Uninsured Motorists*

(for bodily injury and property damage caused by uninsured and underinsured motorists)

## ADDITIONAL DEFINITIONS APPLICABLE TO THIS COVERAGE

"UNINSURED MOTOR VEHICLE" – See definition in COVERAGE AGREEMENT section.

"PROPERTY DAMAGE" – See definition in COVERAGE AGREEMENT section.

# *Coverage Agreement*

## YOU AND A RELATIVE

**We** will pay damages, including derivative claims, which are due by law to **you** or a **relative** from the owner or driver of an **uninsured motor vehicle** because of **bodily injury** suffered by **you** or a **relative**, and because of **property damage**. Damages must result from an accident arising out of the:

1. ownership;
2. maintenance; or
3. use;

of the **uninsured motor vehicle**.

## OTHER PERSONS

**We** will also pay damages, including derivative claims, which are due by law to other persons who:

1. are not a named insured or an insured household member for Uninsured Motorists coverage under another policy; and
2. suffer **bodily injury** while **occupying**:
   a) **your auto**.
   b) a **motor vehicle you** do not own, while it is used in place of **your auto** for a short time. **Your auto** must be out of use because of:
      (1) breakdown;
      (2) repair;
      (3) servicing;
      (4) loss; or
      (5) destruction.
   c) a four-wheel **motor vehicle** newly acquired by **you** to which the Auto Liability coverage of this policy applies. The coverage applies only during the first 30 days **you** own the vehicle, unless it replaces **your auto**.
   d) any other **motor vehicle** while it is being operated by **you** or a **relative**. This extension applies only in policies issued to persons (not organizations). However, the vehicle must not be:
      (1) owned by **you** or a **relative**; or
      (2) furnished to **you** or a **relative** for regular use.

## PROPERTY COVERED

Coverage for **property damage** applies to the following property:

1. **your auto**, including its loss of use.

2. **your auto's** contents which are owned by **you** or **a relative.**
3. **your auto's** contents which are owned by any other person. However, such contents are covered only while their owner is **occupying your auto.**
4. property **you** or a **relative** own while it is contained in any of the following:
   a) a **motor vehicle you** do not own, while it is used in place of **your auto** for a short time. **Your auto** must be out of use because of:
      (1) breakdown;
      (2) repair;
      (3) servicing;
      (4) loss; or
      (5) destruction.
   b) any other **motor vehicle** while it is being operated by **you** or a **relative.** However, the vehicle must not be:
      (1) owned by **you** or a **relative**; or
      (2) furnished to **you** or a **relative** for regular use.

## RECOVERY

1. Before recovery, **we** and the **insured** must agree on two points:
   a) whether there is a legal right to recover damages from the owner or driver of an **uninsured motor vehicle**; and if so,
   b) the amount of such damages.

   If agreement can't be reached, the matter may go to arbitration. Refer to the GENERAL POLICY CONDITIONS for arbitration provisions.
2. Questions between the injured party and **us** regarding such person's entitlement to Uninsured Motorists coverage, or the limits of such coverage, are not subject to arbitration and shall be decided by a court of law.
3. Any judgment against the uninsured (including underinsured) will be binding on **us** only if it has **our** written consent.

## DEFINITIONS

For purposes of this coverage only:

1. An **uninsured motor vehicle** is:
   a) one for which there is no auto liability bond, insurance or other security in effect, applicable to the vehicle owner, operator, or any other liable person or organization, at the time of the accident.
   b) one which is underinsured. This is a **motor vehicle** for which bodily injury liability coverage or other security or bonds are in effect; however, their total amount is less than the limits of this coverage. See the Declarations for those limits.
   c) one for which the insuring company denies coverage or becomes insolvent.
   d) a "hit-and-run" **motor vehicle** which causes **bodily injury** to an **insured** or **property damage** to property of the **insured. Bodily injury** or **property damage** must be caused by physical contact of the "hit-and-run" **motor vehicle** with the **insured** or with an insured **motor vehicle**, or by a non-contact vehicle.

      The driver and the owner of the "hit-and-run" vehicle must be unknown. The **insured** must report the accident to the police or proper governmental authority. **We** must be notified within 30 days, or as soon as practicable, that the **insured** or his legal representative has a legal action for damages arising out of the accident. This notification must include facts supporting the action. If **we** request, any **motor vehicle** the **insured** was occupying at the time of accident must be made available for our inspection.

**H**

Daw v. TownsendDel.Super.,1992.Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
Romaine N. DAW
v.
John R. TOWNSEND, Jr., Townsend Marketing Corporation, a Delaware Corporation, and State Farm Mutual Automobile Insurance Company
**Civ. A. No. 91C-06-026.**

Submitted: Aug. 21, 1992.
Decided: Oct. 22, 1992.

Jon W. Sargent, Rockville, Md.
Louis B. Ferrara, James J. Haley, Jr., Wilmington.
GRAVES, Judge.

*1 This is the Court's decision on plaintiff's Motion for Summary Judgment.

*1 1. On July 1, 1989, Romaine Daw ("plaintiff"), a Maryland resident, was involved in a motor vehicle accident in Sussex County, Delaware. Her vehicle was struck by a vehicle which John R. Townsend, Jr. was driving. Townsend Marketing Corporation owned this vehicle Mr. Townsend was driving. Plaintiff was injured in the automobile accident.

*1 2. On July 1, 1989, plaintiff's automobile insurance policy was with State Farm Mutual Automobile Insurance Company ("State Farm"). The plaintiff and State Farm entered into the policy in the State of Maryland. It is undisputed that plaintiff is a Maryland resident and that the vehicle she operated was registered in Maryland, garaged in Maryland and insured with State Farm under Maryland law.

*1 3. Neither John R. Townsend, Jr. nor Townsend Marketing Corporation had motor vehicle insurance at the time of the accident.

*1 4. Plaintiff filed suit in Superior Court in and for Sussex County against John R. Townsend, Jr., Townsend Marketing Corporation, and State Farm. The action against State Farm, her carrier, was to seek enforcement of the uninsured motorist coverage in her policy in the amount of $25,000.00.

*1 5. Neither John R. Townsend, Jr. nor Townsend Marketing Corporation filed an answer. State Farm filed an answer and in same, alleged the contributory negligence of plaintiff.

*1 6. Default judgment was entered as to the non-answering defendants. At inquisition, this Court set plaintiff's damages at $125,000.00.

*1 7. Plaintiff has filed a motion for summary judgment alleging that the default judgment and damages determined at the inquisition must be considered as *res judicata* against State Farm, and therefore, that plaintiff should be granted summary judgment in the amount of the uninsured coverage, i.e., $25,000.00.

*1 8. State Farm opposes the motion, arguing that the default judgment and determination of damages against the non-answering defendants cannot be considered *res judicata* as to State Farm because it properly filed an answer raising an appropriate defense and is therefore entitled to a trial on the facts as to whether or not its insured, Ms. Daw, was comparatively negligent in excess of 50% of the liability.

*1 9. The parties are in dispute as to whether or not the law to be applied should be that of the State of Maryland or that of the State of Delaware.

*1 10. Delaware courts apply the "most significant relationship" test to resolve conflict issues arising out of contracts. *Travelers Indem. Co. v. Lake,* Del.Supr., 594 A.2d 38 (1991). Based upon the facts of this case, it is clear that the State of Maryland is the state with the most significant relationship to the parties as to any matters concerning contract construction or interpretation.

*1 11. But this is not a question of contract interpretation or construction. The present issue before the Court is whether or not a default judgment obtained against the tort-feasor is *res judicata* as to the uninsured motorist carrier under the factual circumstances where the uninsured motorist carrier is a party to the litigation and has filed an answer defending itself. This is a procedural question, and the law of the State of Delaware shall apply. *Friday v. Smoot,* Del.Supr., 211 A.2d 594, 595 (1965),

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*overruled on other grounds, Travelers Indem. Co. v. Lake, supra.*[FN1]

***2** 12. Plaintiff has provided no legal authority to support its position that in Delaware the uninsured motorist carrier is automatically bound by the principles of *res judicata* to a default judgment obtained against the third-party tort-feasor.

***2** 13. On the date of the inquisition, State Farm did not appear although it had notice of the inquisition hearing. The attorneys for plaintiff and State Farm had been in communication, and I conclude that because of its answer contesting liability and plaintiff's communication to State Farm that plaintiff would not be seeking a default judgment against State Farm at the inquisition, State Farm did not believe it would be prejudiced by its non-appearance at the inquisition. Additionally, the inquisition was for the purpose of setting damages, not for the purpose of determining liability, which is the substance of State Farm's defense. Therefore, the Court refuses to accept plaintiff's proposition that State Farm's failure to appear at the inquisition, for whatever reasons, bound it not only to the determination of damages but to liability also when liability was not at issue at the inquisition hearing.

***2** Under the facts of this case, I do not accept plaintiff's position which would foreclose State Farm from its day in Court. The motion for summary judgment is denied.

***2** IT IS SO ORDERED.

FN1. Alternatively, contrary to plaintiff's argument, the Maryland caselaw cited by plaintiff does not support her under the particular facts of this case. In *Nationwide Mut. Ins. Co. v. Webb*, Md.Ct.Sp.App., 409 A.2d 1127 (1980), it was held that the uninsured motorist carrier had a "privy" relationship to the uninsured tort-feasor and upon notice had the right to intervene and defend the alleged liability of the uninsured tort-feasor. Nationwide declined, relying on provisions in the insurance contract with its insured. The Special Court of Appeals ruled that public policy of Maryland required the Court to apply *res judicata* to Nationwide as to any defenses of the uninsured tort-feasor so long as Nationwide had notice and an opportunity to defend. In the present case, State Farm was sued. It had answered and had raised the liability issue. There has been no liability determination other than as to the non-appearing defendants.

Del.Super.,1992.
Daw v. Townsend
Not Reported in A.2d, 1992 WL 354223 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

t 1070–71. Al- federal judges, ıl to state courts s.

1983 claim was mary judgment. ıd that plaintiffs issue of material ı or policy, plain- *ate a claim* on d under Section ıld be noted that ır failure to state ve not alleged a y the County or l in a deprivation ss rights or that ody of the Coun- ce a claim under

ɪred by a recent es Court of Ap- , *Searles v. SEP-* (1993), which re- 'ailure to state a ion arising out of train in Philadel- *ırles* alleged that ıt entity, followed nance schedule in safety of the pub- Circuit upheld the ling that: "'If the se a duty upon the rovide its employ- vironment, it does PTA to provide a ent.'" *Id.* at 792 'A, E.D.Pa., C.A. 1992 WL 150701 ot have a constitu- firmatively to pro- ɪent. Accordingly, te a claim.

ɪerior Court is AF-

---

**Deborah A. SUTCH, Plaintiff Below, Appellant,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Defendant Below, Appellee.**

**No. 183, 1995.**

Supreme Court of Delaware.

Submitted: Nov. 14, 1995.

Decided: Dec. 28, 1995.

Rehearing Denied Jan. 26, 1996.

Insured filed suit against underinsurance carrier, alleging that carrier breached policy by refusing to pay $50,000 in underinsurance benefits after insured received arbitrator's award of $100,000 against tort-feasor and tort-feasor's insurer paid its $50,000 automobile liability limits. The Superior Court, New Castle County, entered summary judgment for insurer, finding that it was entitled to relitigate issues of liability and damages. Insured appealed. The Supreme Court, Holland, J., held that: (1) judgment entered on arbitrator's award, when neither party to underlying litigation sought trial de novo, was entitled to force and effect for all purposes; (2) insurer was collaterally estopped by judgment on issues of liability and damages, even though it was not party to litigation, given its opportunity to intervene in proceedings to protect its interests; and (3) insured's failure to strictly comply with notice provisions of her policy by providing notice of suit against tort-feasor as soon as possible did not prejudice insurer so as to entitle it to relitigate issues of liability and damages.

Reversed and remanded with directions.

**1. Insurance ⇐467.51(1)**

Insured continued to be legally entitled to recover against tort-feasor for purposes of recovery against insured's underinsurance carrier after tort-feasor's auto liability insurer paid limits of its policy, which was less than amount of judgment. 18 Del.C. § 3902(b)(4).

**2. Insurance ⇐574(.5)**

When arbitrator's award was entered as judgment, because parties made no request for trial de novo, rule that awards entered in arbitration proceedings did not have collateral estoppel effect in any other judicial proceedings was no longer operative, and judgment entered upon award was entitled to force and effect for all purposes. Superior Court Civil Rule 16.1(g)(1, 2), (j).

**3. Insurance ⇐616.1(1)**

Doctrine of collateral estoppel made judgment entered on arbitrator's award in favor of insured and against underinsured motorist binding upon underinsurance carrier where underinsurance carrier received notice of arbitrator's decision more than one month before entry of judgment and took no action to intervene. 18 Del.C. § 3902.

**4. Insurance ⇐562.3(1)**

When insured fails to comply with notification provision, insurer has burden of showing it was thereby prejudiced.

**5. Insurance ⇐531.3(5)**

Underinsurance carrier failed to demonstrate any prejudice from insured's failure to make timely notification of institution of suit against underinsured motorist (UIM) as required by policy, and thus underinsurance carrier was not entitled to relitigate issues of liability and damages, where underinsurance carrier did receive notice and had opportunity to intervene to protect its interest before arbitrator's decision on insured's claim against underinsured motorist ripened into superior court judgment. 18 Del.C. § 3902.

---

Upon appeal from the Superior Court. **REVERSED and REMANDED.**

Court Below–Superior Court of the State of Delaware in and for New Castle County; C.A. No. 94C–08–010.

David H. Erisman of Erisman & Curtin, Wilmington, for appellant.

Francis J. Jones, Jr. (argued), and Eileen K. Anderson of Morris, James, Hitchens & Williams, Wilmington, for appellee.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

HOLLAND, Justice:

The plaintiff-appellant, Deborah Sutch ("Sutch"), was injured in a motor vehicle accident. A Superior Court arbitrator determined that Sutch's injuries had been caused by the negligence of a third-party tortfeasor, Jean Dale ("Dale"). Following the arbitration, a judgment was entered in Superior Court in favor of Sutch, and against the third-party tortfeasor, in the amount of $100,000. The third-party tortfeasor's insurance carrier paid $50,000 to Sutch, which represented the limits of Dale's liability coverage. The defendant-appellee, State Farm Mutual Automobile Insurance Company ("State Farm"), is Sutch's underinsured motor vehicle insurance carrier. State Farm was not a party to the arbitration in the Superior Court.

This appeal presents a question of first impression: whether State Farm is obligated to make underinsurance coverage payments to Sutch, pursuant to the judgment entered in the Superior Court against the tortfeasor, Dale; or whether State Farm can relitigate the underlying issues of liability and damages. Sutch sets forth three arguments in support of her claim that State Farm is obligated to pay her underinsurance benefits. First, Sutch contends that State Farm must pay her $50,000 in underinsurance benefits pursuant to the provisions of her policy and pursuant to 18 *Del.C.* § 3902. Second, Sutch contends that the collateral estoppel bar in Superior Court Civil Rule 16.1(j) does not entitle State Farm to relitigate the issues of liability and damages, which resulted in the entry of the Superior Court's judgment against the tortfeasor, Dale. Third, Sutch contends that the Superior Court erred in finding that State Farm had shown the requisite prejudice resulting from Sutch's failure to comply with the notice provisions of her insurance policy, such that relitigation of the issues of liability and damages would be proper.

This Court has concluded that State Farm was obligated to pay underinsurance benefits to Sutch in an amount consistent with the entry of the $100,000 judgment in Superior Court against the tortfeasor, Dale. Therefore, the decision of the Superior Court to the contrary, is reversed.

*Facts*

On December 5, 1991, Sutch was injured in a motor vehicle accident involving three vehicles. Sutch filed suit in Superior Court against Dale, alleging that the accident and the injuries Sutch sustained were caused solely by Dale's negligence. The suit filed by Sutch was subject to compulsory arbitration pursuant to Superior Court Civil Rule 16.1. Dale filed a third-party action against Marco Rizzo ("Rizzo"), seeking contribution and/or indemnification. Dale alleged that Rizzo's negligence caused the accident.

The arbitration hearing was held on May 4, 1994. Sutch, Dale and Rizzo had previously entered into a stipulation, which provided that the Superior Court arbitrator could award damages in excess of $100,000 [1] and that the decision would not be subject to trial *de novo*. Super.Ct.Civ.R. 16.1(g)(3). The stipulation had also provided for limited discovery to be conducted.

On May 11, 1994, a written arbitrator's order was issued. The arbitrator decided in favor of Sutch and against Dale in the amount of $100,000. The arbitrator also decided in favor of Rizzo and against Dale in the third-party action.

Dale's vehicle was insured by Nationwide Insurance Company ("Nationwide"). That policy provided liability coverage up to $50,000 per person. Sutch's motor vehicle was insured pursuant to a policy issued by State Farm. That policy included underinsured motor vehicle coverage for bodily injury in the amount of $100,000 per person.

1. Under Superior Court Civil Rule 16.1, the jurisdictional limit for arbitrations is $100,000. *See* Super.Ct.Civ.R. 16.1(a).

On May 12,
State Farm of
He demanded
behalf of Sutc
sured motor v
surance policy.
from State Far
the demand in

On June 17,
Sutch had rec
arbitrator's d
per.Ct.Civ.R. 1
tered by the S
against Dale ir
tionwide paid
Dale's liability

Sutch's attor
Superior Cour
was entered.
of $50,000 in u
ant to Sutch's
sponse.

Sutch filed s
perior Court
leged that Sta
sions of her a
pay $50,000
Sutch contend
to those benef
entered agains

Sutch and S
for summary
tions were b
Superior Cou
that the judgm
not binding up
either liability
Farm was no

2. Section 390
Every insu
option to pu
sonal injury
per person
$300,000 s
limits for b
basic policy
include un
coverage.
(1) Accep
shall ope
sured cov

On May 12, 1994, Sutch's attorney advised State Farm of the results of the arbitration. He demanded the payment of $50,000 on behalf of Sutch, pursuant to the underinsured motor vehicle coverage in Sutch's insurance policy. After receiving no response from State Farm, Sutch's attorney reiterated the demand in a letter dated May 31, 1994.

On June 17, 1994, since neither Dale nor Sutch had requested a trial *de novo,* the arbitrator's decision became final. Super.Ct.Civ.R. 16.1(g)(1). Judgment was entered by the Superior Court for Sutch and against Dale in the amount of $100,000. Nationwide paid $50,000 to Sutch, the limits of Dale's liability policy.

Sutch's attorney notified State Farm of the Superior Court's judgment the same day it was entered. He again demanded payment of $50,000 in underinsurance benefits pursuant to Sutch's policy. He received no response.

Sutch filed suit against State Farm in Superior Court on August 1, 1994. Sutch alleged that State Farm breached the provisions of her automobile policy by refusing to pay $50,000 in underinsurance benefits. Sutch contended that she was legally entitled to those benefits as a result of the judgment entered against Dale.

Sutch and State Farm filed cross-motions for summary judgment. Those cross-motions were briefed and argued before the Superior Court. The Superior Court held that the judgment entered against Dale was not binding upon State Farm with respect to either liability or damages, because State Farm was not a party to the arbitration.

*18 Del.C. § 3902*
*Underinsured Motorist Insurance*

18 *Del.C.* § 3902 requires underinsured motorist coverage (UIM) to be made available to Delaware motorists.[2] This Court has recognized that the purpose of 18 *Del.C.* § 3902 is to permit a risk-averse person to establish a fund to protect against losses caused by uninsured/underinsured motorists by contracting for supplemental coverage. *Hurst v. Nationwide Mutual Ins. Co.,* Del. Supr., 652 A.2d 10, 12 (1995). In *Hurst,* this Court concluded that the logical operation of Section 3902 is embodied in its express terms:

> First, an offer of uninsured coverage must be extended, not to exceed basic policy limits. 18 *Del.C.* § 3902(b). Second, the damages recoverable for "bodily injury" from the uninsured carrier are quantified in Section 3902(b)(1) as the amount the insured is "legally entitled to recover from the driver of an underinsured motor vehicle." Third, Section 3902(b)(3) provides that the amount of any other "bodily injury" insurance available to the claimant must be exhausted (deducted) before the payment "for bodily injury" by the uninsured carrier pursuant to Section 3902(b)(1). Thereafter, to the extent that the innocently injured claimant has not been fully compensated for all the bodily injury damages that could legally be recovered from the uninsured/underinsured driver, the claimant is entitled to be paid for the uncompensated bodily injuries, up to the full policy limits of the uninsured coverage. 18 *Del.C.* § 3902(b)(1) and (3).

*Hurst v. Nationwide Mutual Ins. Co.,* 652 A.2d at 13–14.

2. Section 3902(b) provides in pertinent part that:
Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.
(1) Acceptance of such additional coverage shall operate to amend the policy's uninsured coverage to pay for bodily injury damage that the insured or his legal representative are *legally entitled to recover from the driver of an underinsured motor vehicle.*

. . . . .

(3) The insurer shall not be obligated to make any payment under this coverage until after the limits of liability under all bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted by payment of settlements *or judgments.*

18 *Del.C.* § 3902(b) (emphasis added).

In the case *sub judice*, Sutch purchased $100,000 worth of underinsurance coverage from State Farm, which State Farm was required to offer to her under 18 *Del.C.* § 3902. Following an arbitration, *judgment* was entered by the Superior Court in favor of Sutch and against Dale in the amount of $100,000. Accordingly, $100,000 constituted the amount that Sutch was "legally entitled to recover from the driver of an underinsured motor vehicle." 18 *Del.C.* § 3902(b)(1).

[1] Section 3902(b)(3) provides that "the insurer shall not be obligated to make any payment under this coverage until after the limits of liability under all bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted by payment of settlement or judgments." Following the entry of judgment in Superior Court, Nationwide paid $50,000, the limits of Dale's liability coverage, to Sutch. *See* 18 *Del.C.* § 3902(b)(3).[3] Once the Section 3902 requirements have been satisfied, "to the extent that the innocently injured claimant has not been fully compensated for all the bodily injury damages that could legally be recovered from the uninsured/underinsured driver, *the claimant is entitled to be paid for the uncompensated bodily injuries, up to the full policy limits of the uninsured coverage.*" *Hurst v. Nationwide Mutual Ins. Co.*, 652 A.2d at 13, 14 (citing 18 *Del.C.* § 3902(b)(1) and (3) (emphasis supplied)).

According to Sutch, State Farm failed to meet its statutory obligation under 18 *Del.C.* § 3902 because all of the elements thereunder, as analyzed by this Court in *Hurst*, had been satisfied, to wit: she had purchased UIM coverage; the damages Sutch was entitled to recover were quantified at $100,000; and the limits of the tortfeasor's $50,000 liability coverage were paid. Accordingly, Sutch argues that she is entitled to be paid $50,000 by State Farm for her uncompensated bodily injuries, pursuant to her underinsurance coverage.

### *Collateral Estoppel*
### *Superior Court Civil Rule 16.1*

State Farm acknowledges that Sutch had UIM coverage of $100,000 per person and that the limit of the tortfeasor's liability coverage was $50,000 per person. Nevertheless, State Farm argues that it is not obligated to pay underinsurance benefits to Sutch. State Farm contends that it is not bound by the findings of the arbitrator with regard to the issues of liability and damages, because it was not a party to the arbitration between Sutch, Dale and Rizzo.

[2] In support of its argument, State Farm submits that Superior Court Civil Rule 16.1(j) precludes the arbitrator's decision from binding State Farm. Superior Court Civil Rule 16.1(j) provides that:

> [a]wards entered in arbitration proceedings under this Rule shall not have collateral estoppel effect in any other judicial proceedings.

Super.Ct.Civ.R. 16.1(j). This provision precludes an *arbitration award* from having collateral estoppel effect. That provision is operative only with regard to the Prothonotary's entry of "the *arbitrator's award* in an arbitration order docket." Super.Ct.Civ.R. 16.1(g)(2) (emphasis added).

Under the facts of this case, Rule 16.1(j) is inapposite. The parties, Sutch and Dale, made no request for a trial *de novo* following the arbitration. Superior Court Civil Rule 16.1(g)(1) expressly provides that when an

3. Although the payment by Nationwide satisfied the judgment against Dale, Sutch "continue[d] to be legally entitled to recover against [Dale] for the purposes of recovery against [Sutch's] underinsurance carrier." *See* 18 *Del.C.* § 3902(b)(4). On June 23, 1994, the General Assembly added 18 *Del.C.* § 3902(b)(4) which, in pertinent part, says:

> An insured who executes a release of a single tortfeasor owner or operator of an underinsured motor vehicle in exchange for payment of the entire limits of liability insurance afforded by the tortfeasor's liability insurer shall continue to be legally entitled to recover against that tortfeasor for the purposes of recovery against the insured's underinsurance carrier.... 69 *Del.Laws*, c. 253, § 1 (1994).

Although it is stated in terms of a release, rather than the satisfaction of a judgment, the legislative intent is clearly to provide plaintiffs with the ability to terminate their claim against a tortfeasor and still recover UIM benefits. The effective date of the amendment was June 23, 1994, prior to the date on which Sutch filed this complaint and satisfied the judgment against Dale.

arbitrator's award is entered as a judgment, "after the time for requesting a trial *de novo* has expired, [t]he *judgment* shall have the same force and effect as a *judgment* of the [Superior Court] in a civil action except it shall not be subject to appeal." Super.Ct.Civ.R. 16(g)(1) (emphasis added).

State Farm was given notice of the arbitrator's award but did not attempt to intervene in the proceedings prior to an entry of judgment against Dale. A *judgment* was then entered in Superior Court pursuant to the provisions of Rule 16.1. *See* Super.Ct.Civ.R. 16.1(g)(1) and (i). The judgment of the Superior Court entered in favor of Sutch and against Dale was entitled to force and effect for all purposes, e.g., collateral estoppel, *res judicata*, or full faith and credit.

*Collateral Estoppel*
*Binding Effect of Judgment*

[3] This Court has not previously addressed the binding effect of a judgment rendered against an uninsured/underinsured motorist *vis-a-vis* a prevailing tort plaintiff's uninsured/underinsured motor vehicle insurance carrier. Several courts from other jurisdictions, however, have had the opportunity to address an issue which is similar to the one presented in this appeal, i.e., whether an insurer is bound by a default judgment taken against a tortfeasor?[4] Those courts have concluded that the UM/UIM statutes do not mandate that an insurer be bound by a default judgment against the tortfeasor in all circumstances. Instead, those courts have held that the insurer will be bound by the default judgment only where the insurer "had full notice and adequate opportunity to intervene and present any defenses and arguments necessary to protect its position." *Champion Ins. Co. v. Denney*, Ala.Supr., 555 So.2d 137, 139 (1989).

In *Champion*, the insured did not comply with the policy's "consent to sue" clause. *Id.* at 137. The insured did, however, provide the carrier with a copy of the complaint filed against the tortfeasor. *Id.* The Alabama Supreme Court concluded that:

> The underlying purpose for including the "consent to sue" clause in the policy is to protect the insurance company from unknown or secret actions taken by the insured and the uninsured motorist. Once the insurer is placed on notice of the tort action and given the opportunity to intervene, this purpose is satisfied.

*Id.* at 139. In *Champion*, the court held that the insurer was bound by the default judgment.

In this case, the record reflects that, although State Farm was not a party to the arbitration, it received notice of the arbitrator's decision more than a month before the entry of judgment in Superior Court. Thus, State Farm had the opportunity to intervene in the proceedings between Dale and Sutch to protect its interests, once it was notified of the demand for payment of underinsurance benefits. State Farm elected not to do so.

We find the *ratio decidendi* in *Champion* to be persuasive. We also find that Appleman's treatise on insurance law and practice is instructive on this issue:

> A judgment rendered against the uninsured motorist may be conclusive against the uninsured motorist insurer, particularly where it has been joined as a party, or has notice of the proceedings, or a right to defend, *or intervene, which has elected not to do so.*

8C Appleman, Insurance Law and Practice, § 5089.75, p. 372–73 (1981 and 1994 Supp.) (citations omitted).

In this case, State Farm took no action to intervene. It had sufficient time to do so. This Court holds that the doctrine of collateral estoppel makes the judgment entered by the Superior Court, in favor of Sutch and against Dale, binding upon State Farm. *Columbia Casualty Co. v. Playtex FP, Inc.*, Del.Supr., 584 A.2d 1214 (1991).

*Notice Provision*
*State Farm Policy*

State Farm's alternative argument is based upon the terms of its policy with Sutch. One portion of the policy provides that a "*person* making [a UIM] claim [ ] shall

4. These states have UM/UIM laws which are substantially similar to Section 3902.

. . . send us a copy of all suit papers as soon as possible, when the party liable for the accident is sued for these damages."[5] The UIM portion of the policy states that State Farm is not bound by any judgment against any person obtained without its written consent.[6] It is undisputed that Sutch did not comply with these policy provisions. Sutch did not notify State Farm of her lawsuit against Dale until after the arbitrator's decision was rendered.

[4] This Court has held that the lack of notification to a carrier does not necessarily relieve the carrier of making payments pursuant to the policy. When the insured fails to comply with a notification provision, the carrier has the burden of showing it was thereby prejudiced. *State Farm Mut. Automobile Ins. Co. v. Johnson,* Del.Supr., 320 A.2d 345 (1974); *Cf. Bryant v. Federal Kemper Ins. Co.,* Del.Super., 542 A.2d 347 (1988); *Home Ins. Co. v. Maldonado,* Del.Supr., 515 A.2d 690 (1986). In *Bryant,* the Superior Court addressed this Court's holding in *Home Ins. Co.* and stated:

> Since an insurer has no obligation to make any payment under its UIM coverage until after the limits of liability insurance policies available to the insured have been exhausted, [18 *Del.C.*] § 3902(b)(3), the insurer's subrogation right will have already been rendered moot before it makes any payment to its insured. A settlement and release of an underinsured motorist, therefore, cannot prejudice the insurer because the limitation on subrogation imposed by the Supreme Court converts this right for all practical purposes into a nullity.

*Bryant v. Federal Kemper Ins. Co.,* 542 A.2d at 350. In this case, the Superior Court found that Sutch did not comply with the notice provisions of the State Farm insurance policy, but held "these failings do not, on their own, release State Farm from liability under the policy."

[5] The Superior Court properly held: "to the extent that State Farm is now seeking to deny Sutch's claim based on the lack of notice it must fail based on *Home* and *Bryant.*" Nevertheless, the Superior Court concluded that Sutch's failure to notify State Farm of the arbitration until after the arbitrator had reached a decision breached the notice provisions of her State Farm insurance policy. Therefore, the Superior Court held that State Farm was entitled to litigate Sutch's claim for underinsurance benefits.

The latter determination by the Superior Court is inconsistent with this Court's prior holdings. *Home Ins. Co. v. Maldonado,* Del. Supr., 515 A.2d 690 (1986). The record reflects State Farm had notice and the opportunity to intervene to protect its interests before the arbitrator's decision ripened into a Superior Court judgment. Therefore, State Farm failed to demonstrate any prejudice, which would entitle it to litigate the issues of Dale's liability and damages, as a result of Sutch's failure to strictly comply with the notice provisions of her policy.

*Conclusion*

The judgment of the Superior Court with regard to State Farm's obligation to pay $50,000 in underinsurance benefits to Sutch is REVERSED. The Superior Court is directed to enter judgment in favor of Sutch and against State Farm in the amount of $50,000, representing the amount of underinsurance benefits payable to Sutch. This matter is remanded to the Superior Court for further proceedings in accordance with this opinion.




5. The State Farm policy contains the following provision under the section entitled "Reporting a Claim:"

> The *person* making [a UIM] claim [] shall . . . send us a copy of all suit papers as soon as possible, when the party liable for the accident is sued for these damages.

(emphasis in original).

6. The UM/UIM portion of the policy, under the section entitled "Deciding Fault and Amount," provides:

> We are not bound by any judgment against any *person* or organization obtained without our written consent.

(emphasis in original).