*EXHIBIT "B"*

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                           - - -

 4   SARA S. ECHEVARRIA,         :   Civil Action
                                 :
 5              Plaintiff,        :
                                 :
 6         v.                    :
     U-HAUL INTERNATIONAL,        :
 7   INC., et al.,                :
                                 :
 8              Defendants.       :   No. 05-284-GMS

 9                           - - -

10                  Wilmington, Delaware
                  Monday, February 27, 2006
11                       3:15 p.m.

12                           - - -

13   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

14   APPEARANCES:

15
           ROGER D. LANDON, ESQ.
16         Murphy & Landon

17                              Counsel for Plaintiff

18         STEPHEN L. CAPONI, ESQ.
           Blank Rome, LLP
19               -and-
           FRANCIS H. LoCOCO, ESQ.
20         Quarles & Brady LLP
           (Milwaukee, Wisconsin)
21
                                Counsel for U-Haul
22
           ROBERT J. LEONI, ESQ.
23         Shelsby & Leoni

24                              Counsel for Nationwide

25
```

```
 1              THE COURT:  Good afternoon.  Please be seated,
 2   counsel.
 3              (Counsel respond "Good afternoon.")
 4              THE COURT:  Counsel for plaintiff?
 5              MR. LANDON:  Good afternoon, Your Honor.  I am
 6   appearing for the plaintiff.  I am Roger Landon.  I have
 7   substituted in for Mr. DiLiberto.
 8              THE COURT:  Fine.  Other counsel?
 9              MR. LEONI:  Your Honor, Your Honor, Robert
10   Leoni, from Shelsby & Leoni, representing the defendant
11   Nationwide.
12              MR. CAPONI:  Steve Caponi, Blank Rome, for
13   U-Haul International, Inc., along with Frank LoCoco.
14              MR. LoCOCO:  I am with Quarles & Brady in
15   Milwaukee.
16              THE COURT:  I think we need to hear evidence in
17   support for entry of a default judgment against the
18   individual plaintiff, whose name is -- remind me, counsel.
19              MR. LoCOCO:  Roger Mayfield.
20              THE COURT:  I think a default has been entered.
21   Let's take care of that first.
22              MR. LANDON:  I guess I had a slight degree of
23   confusion about precisely what we were doing on that point,
24   Your Honor.
25              I note in reviewing the file that Mr. DiLiberto
```

1   had filed a motion for default against Mr. Mayfield. That
2   was filed back on August 15 of '05.
3            Then the Clerk of the Court actually entered
4   default as to Mayfield on October 5 of '05, is my
5   understanding.
6            THE COURT: Do you want money damages?
7            MR. LANDON: We do. But that is I think
8   probably something that need not happen now. That can
9   happen if and when the trial of this matter against the rest
10  of the defendants occurs. It doesn't seem to me to make
11  sense to do that twice. Certainly, we are not in a position
12  to put on all of our damages evidence now. So we thought --
13  and the defendants, in fairness to the rest of the
14  defendants, have not had an opportunity to conduct their
15  discovery with respect to damages. So the parties aren't
16  really in a position to put on evidence and to put on
17  counter-evidence of defendant.
18           MR. LoCOCO: Your Honor, that is fine with us.
19  We have not conducted any of that discovery. And I assume
20  that Mr. Landon wouldn't know what to do with that judgment
21  if he got it anyway.
22           THE COURT: I have got no problem with that.
23  So, then, what we need to do is schedule the balance of the
24  matter.
25           MR. LANDON: I think that is true.

1    MR. LEONI: If I could get on the record.
2    Nationwide has been sued as the uninsured/underinsured
3    motorist carrier for the plaintiff as to Mr. Mayfield,
4    because they didn't know if there was insurance or not, and
5    if there was, to what extent. When the motion for default
6    was filed, I filed a response to the motion, basically
7    saying I had no problem with the default being entered, just
8    that it would not be binding as to Nationwide. We duly
9    answered, and chose to fully litigate the case, including
10   negligence, causation, et cetera, just to reserve our
11   rights. I wanted to make sure that any silence today wasn't
12   a waiver.
13           Interestingly, the Court clerk entered the
14   default judgment after we filed our response.
15           THE COURT: Your silence wouldn't be taken as a
16   waiver. The default is only against Mr. Mayfield.
17   Nationwide, as far as this Court is concerned, has waived
18   nothing.
19           Why don't you stay at counsel table. You can
20   speak from there. I thought we were going to need to take
21   evidence. That is the only reason I convened the formal
22   session of Court.
23           You can stay at your seats, remain seated. We
24   will real quickly schedule this case.
25           I think I read in the joint status report, which

1  I thank you for preparing, there is going to be a need to
2  amend and/or join in this case. Is that correct? April
3  14th, is that enough time?
4      MR. LANDON: I think that should be plenty of
5  time, Your Honor.
6      THE COURT: Roughly 45 days. What we will do is
7  issue a schedule that will contain these dates.
8      How much time do you need for fact discovery,
9  gentlemen? Let me ask you this first question. Do you want
10 to stage discovery, that is, bifurcating the fact and
11 expert, or do you want to have everything together?
12     MR. LoCOCO: Your Honor, we have previously
13 discussed this. We anticipated staging the discovery.
14     THE COURT: Okay. Then in terms of fact
15 discovery, how much time do the parties anticipate they are
16 going to need?
17     MR. LANDON: Well, I think it would be perhaps
18 helpful, Your Honor, if we know what the Court was thinking
19 in terms of a trial.
20     THE COURT: April 9, '07.
21     MR. LANDON: Very well. I would --
22     THE COURT: You shouldn't -- I don't schedule
23 against the trial date. You tell me how much time you think
24 is reasonable and I give you that much time. If it comes to
25 pass that because we have a long, relatively long trial

```
 1   date -- and I don't expect dispositive motions practice in
 2   this case, and I am not providing an opportunity for such.
 3   Unless I am told otherwise, it strikes me this is a case
 4   that is probably going to need to be resolved, that there
 5   are going to be genuine issues based upon material facts or
 6   disputes.  And that's not going to lend itself to summary
 7   resolution in any way.  You may want to disabuse me of that
 8   notion, if you can.
 9              MR. LoCOCO:  Well, the one hiccup in all that,
10   Your Honor, is the complaint as it stands now includes a
11   claim, a products liability, strict liability claim, which
12   would entail expert witness testimony from the plaintiff's
13   side with respect to either design or manufacturing defect
14   on my client's trailer.  I would anticipate the possible
15   need for filing Daubert motions.  And depending on the
16   Court's ruling there --
17              THE COURT:  That is not 56.
18              MR. LoCOCO:  Then if the Court grants the
19   Daubert motion, we would move to Rule 56.
20              THE COURT:  No, you won't, not under my process.
21   The Daubert process will be engaged at the time of the
22   pretrial conference.  Motions for summary judgment, that
23   deadline would have been set long before that time.  So, no,
24   that's not the way you litigate before me.
25              MR. LoCOCO:  I am a little confused.
```

1          THE COURT:  Don't be confused, counsel.
2          MR. LoCOCO:  We go to the final pretrial
3  conference and the Court finds in favor of our Daubert
4  motion and excludes plaintiff's expert and he or she cannot
5  advance her case without this expert witness.
6          THE COURT:  That may have the impact.  But I am
7  not going to entertain a Rule 56 motion in the manner in
8  which you are describing.
9          MR. LoCOCO:  That is fair.  Thank you.
10         THE COURT:  But I will also add that that
11 anticipates a great deal, of course.
12         MR. LANDON:  Just in terms of how much time we
13 need for factual discovery, we do have, we are likely to
14 have depositions in multiple states.  There is at least
15 three states, maybe four, that might be --
16         THE COURT:  Contiguous states?
17         MR. LANDON:  No.  There is Colorado, there is
18 Florida, there is here, there are Arizona.  Mr. Mayfield
19 himself is living, we believe, somewhere down in Florida.
20 He must be served.  The vehicle was rented to him in
21 Florida.
22         The vehicle itself originated from either
23 Arizona or Colorado, I am not clear.  And the trailer
24 originated from the other state.  I am not sure precisely
25 where we are going to need to go or who we are going to need

1 to get. I am hoping from the U-Haul defendants and the new
2 defendants that we proposed to add in, from their
3 perspective, we can try to coordinate these things instead
4 of fighting about who needs to be deposed and where. I
5 think we are probably going to need six months.
6       THE COURT: That is fine.
7       MR. LoCOCO: Six months is fine, Your Honor.
8       THE COURT: Ms. Walker.
9       MS. WALKER: October 16th.
10       THE COURT: October 16th will be the cutoff for
11 fact discovery, which means that all discovery requests need
12 to be initiated in time to be fulfilled on that date.
13       Let me say a quick word about discovery
14 disputes. Should they occur during the course of the
15 discovery period, first and foremost, counsel are obliged
16 and required to use every good office you have to resolve
17 those disputes on your own, the Court as a last resort.
18       If you need to report to us, we are here, not
19 the royal "we," we and my staff, you simply call. My staff
20 will give you a date for a teleconference and tell you that
21 no less than 48 hours in advance of that teleconference date
22 that we will need a two-page letter, it doesn't have to be
23 two pages, but no more than two-page letter, just outlining
24 the nature of the dispute or disputes. It should be
25 nonargumentative. It must be nonargumentative and jointly

1  submitted.

2  We will get on the phone. If we can't resolve
3  the dispute during the course of the teleconference, which I
4  would say at least 95 percent of the time happens even in
5  the most complex of cases, I will give you the opportunity
6  to write letter briefs in the length of two to five pages.
7  If it is the kind of matter that is unique and requires more
8  thought and writing, then full-blown motions practice will
9  be permitted. Not likely to happen. But that's how we
10 resolve discovery disputes around here.

11 I give you three times to raise discovery
12 disputes with me. After the third time, there is a
13 presumption -- I mean for good cause entertain a dispute or
14 disputes beyond that. But then the presumption kicks in
15 that you are not behaving well with one another and I am
16 going to send you to a discovery master, and you will pay
17 for that. Your clients will have to pay for that.

18 So let's talk about your expert reports and
19 exchange of reports, cutoff for expert depositions, that
20 kind of thing.

21 What do you want to propose? In fact, what we
22 could do is, I could simply instruct that the plaintiff
23 prepare the schedule, leave it to counsel to discuss this
24 matter a little further, give you the balance of the
25 schedule, and you can just submit a schedule for my

```
 1   signature, which would include and encompass these
 2   additional matters, if you would like.
 3           MR. LoCOCO:  That is fine with us, Your Honor.
 4           MR. LANDON:  That is fine, Your Honor.
 5           THE COURT:  If you could do that within a week
 6   from today, that would be sufficient time.  I will impose
 7   that obligation on the plaintiff to circulate the proposed
 8   schedule.
 9           Meanwhile, the pretrial order due date will be
10   close of business on the 26th day of February of '07.  There
11   is a form of order on the Court's website downloaded.
12   Please pay careful attention to it.  It will guide you in
13   the leadup to the actual pretrial conference.  After all,
14   the pretrial order will be our roadmap to trial.  If you
15   have questions about it, please call chambers, and my staff
16   will be more than happy to try to answer any questions.
17           The thing that I try to highlight during these
18   scheduling conferences that is somewhat unique to my
19   practice is that motions in limine, counsel, which will
20   encompass your Daubert motions, counsel will need to on your
21   own agree upon a schedule for the briefing of those motions
22   and the submission of those motions at the same time,
23   concurrent with the submissions of the proposed pretrial
24   order, fully briefed.  In other words, I don't accept
25   motions that you tell me, We will brief these.  No.  They
```

1   are fully briefed at the time that you submit the proposed
2   pretrial order.
3           And there will be a limited number, you will see
4   in the order, of those motions that will be permitted.
5           We will have a pretrial conference we will
6   convene in chambers in all likelihood on March 20th,
7   beginning at 11:00. Trial, as I said, will be April 9 of
8   '07.
9           Let's talk about the number of days. I think I
10  recall seeing five or six days needed. I would like to
11  explore that a little bit. I know it's early. But do you
12  have a sense of how many fact witnesses you might need, how
13  many experts we are talking about, the type of experts?
14          MR. LANDON: There is going to be probably at
15  least two medical experts, perhaps three. Probably at least
16  one, perhaps two liability experts, depending on what we
17  find out in discovery. And probably a number of other
18  factual experts.
19          THE COURT: You mean factual witnesses?
20          MR. LANDON: Factual witnesses on behalf of the
21  plaintiff. I would hope that the plaintiff would be able to
22  present her entire case-in-chief within three full court
23  days.
24          THE COURT: Okay. Do you have any sense of how
25  many eyewitnesses there were?

1   MR. LANDON: As to the incident itself, what I
2   am mainly talking about is lifestyle witnesses. They will
3   all be brief. But they will be important. We may have as
4   many as, anywhere from half a dozen to a dozen such
5   witnesses. I wouldn't anticipate any of those witnesses
6   being more than 15 minutes on the stand.
7   THE COURT: The bulk of the plaintiff's
8   case-in-chief will be its expert presentation.
9   MR. LANDON: Yes, the expert presentation I
10  would say the bulk would be. Both damages and liability.
11  THE COURT: Sure.
12  Counsel.
13  MR. LoCOCO: I would just add to that the, you
14  know, it would be in your case or our case, I think there
15  would be one or two folks from the EMS Services that
16  attended the plaintiff. From our perspective, it depends a
17  little bit on what the plaintiffs do from an expert
18  perspective.
19  But I would anticipate one or two in-house
20  fact/expert witnesses, maybe an engineer in house, and one
21  or two liability experts. Maybe a medical expert. I
22  haven't had a chance to depose Ms. Echevarria, so I don't --
23  I may have an IAB doctor, I may not. I don't knee-jerk to
24  put on an IME doctor in my practice. With that said, I
25  think a full trial can be done in five or six days, just

1  sitting here today thinking about it.
2         THE COURT: I am going to set it down for five
3  days. If this gives you any comfort, it may or may not, you
4  are going to get a full five and a half hours a day in front
5  of the jury. It will take about an hour and a half,
6  probably an hour and a half, to select a jury. At this
7  stage, and I will let you know later -- I am not sure
8  whether I am going to time this case or not. It is not my
9  present intent to do that. So, again, I know it is early,
10 from what I have heard, and the Court's experience, given
11 the nature of the case, given the kinds of complex civil
12 cases that we do on a regular basis in this Court, this is
13 not one of them, in my estimation, I think five days is
14 ample time.
15         We will run an efficient operation. I know
16 counsel will cooperate in that. We will pare things down to
17 some extent during the course of the pretrial process.
18         I think I recall that counsel are amenable to
19 having this matter referred to the Magistrate Judge for
20 possible settlement considerations? Is that accurate?
21 Or --
22         MR. LoCOCO: I am not sure that we were asked.
23 But we are.
24         MR. LANDON: We are as well, Your Honor.
25         THE COURT: Your report indicates there have

```
 1   been limited discussions but that you anticipate referral to
 2   the Magistrate Judge. Since you are, I think that is a wise
 3   thing to do. She is a very able neutral, Judge Thynge, that
 4   is. So you won't call her, she will call you. You should
 5   include a paragraph referring the matter when you prepare
 6   the scheduling order. There is a form of scheduling order
 7   on my website. Otherwise, they are around.
 8          Were there any matters in the status report that
 9   I missed?
10          MR. LANDON: In terms of the proposed amendment
11   to the complaint, I think counsel hopefully are going to be
12   able to agree. We have had some preliminary discussions
13   about the form of that amendment, and we may be in agreement
14   as to acceptance of service for the three related U-Haul
15   entities. That may be fairly smooth, if it doesn't follow
16   the usual procedure of filing a motion on that. I don't
17   think we are going to need to do that.
18          THE COURT: Okay. I think that's exhausted my
19   list of matters. Thanks, counsel.
20          MR. LoCOCO: Thank you.
21          (Conference concluded at 3:33 p.m.)
22                    - - -
23   Reporter: Kevin Maurer
24
25
```