

Phone:   (302) 425-6408
Fax:     (302) 528-5106
Email:   caponi@blankrome.com

February 23, 2007

**BY ELECTRONIC FILING**

The Honorable Gregory M. Sleet
U.S. District Court
District of Delaware
844 N. King Street
Lockbox 19
Wilmington DE 19801

   RE: ***Sara S. Echevarria v. U-Haul International, Inc., et al.***
      **United States District Court, District of Delaware, No. 05-284 GMS**

Dear Judge Sleet:

  At our recent pre-trial conference, Your Honor directed the parties to confer and then if necessary submit legal authority on two issues: (1) whether plaintiff can maintain a strict liability cause of action[1] against U-Haul in light of the exclusion of her expert; and (2) whether Nationwide is bound by Mayfield's default. The parties have conferred and have been unable to reach agreement as to either issue. This letter constitutes U-Haul Co. of Florida's submission in response to the questions posed by the Court. Each of the questions will be answered in turn.

   Question 1: Can plaintiff maintain **any** cause of action against U-Haul Co. of Florida now that her expert has been excluded?

  Plaintiff asserts that, to the extent the coupler mechanism was defective, U-Haul of Florida ("U-Haul") is strictly liable for plaintiff's injuries. She has also pled causes of action in negligence and under 6 Del. C. § 2-318 for breach of warranty.[2] No matter the theory, plaintiff cannot maintain any of these causes of action against U-Haul now that her expert has been precluded by the Court.

  Under Delaware law, plaintiff can only support these claims by proving that the product at issue was defective. *See, e.g., Baylis v. Red Lion Group, Inc.*, C.A. No. 04-1462-KAJ, 2005 WL 3309613 (D. Del.) aff'd in part, 2007 WL 188879, (3d. Cir.) (attached hereto as Ex. 1). Here, as a result of this Court's ruling that granted U-Haul's *Daubert* motion and excluded plaintiff's expert, plaintiff must rely solely on the testimony of Roger Mayfield and the fact that an accident occurred in proving that the U-Haul trailer rented to Mayfield was defective. This circumstantial evidence is wholly insufficient under Delaware law and plaintiff cannot, as a matter of law, sustain her burden.

---

[1] As noted below, we have broadened the Court's question in light of the research we have conducted. Plaintiff simply cannot meet her burden under any of the three counts she has pled against U-Haul Co. of Florida.

[2] This latter cause of action is actually mispled. Since this involved a rental transaction with Roger Mayfield, even if plaintiff could support a breach of warranty cause of action, the applicable statutory provision would be 6 Del. C. §2A-216.

Chase Manhattan Centre  1201 Market Street  Suite 800  Wilmington, DE 19801
www.BlankRome.com

123128.00601/40167412v.1
 Delaware • Florida • New Jersey • New York • Ohio • Pennsylvania • Washington, DC • Hong Kong



The Honorable Gregory M. Sleet
February 23, 2007
Page 2

In *Baylis*, the Delaware District Court applied the longstanding principle of Delaware law that, in proving negligence by circumstantial evidence, plaintiff must show that "negligence is the only possible inference from the circumstantial evidence." *Baylis*, 005 WL 3309613, at *3 (citations omitted); *see also Ciociola v. Del. Coca-Cola Bottling Co.*, 172 A.2d 252, 257 (Del. 1961). Specifically, the court in *Baylis* noted that, "[w]here there is no direct evidence of a manufacturing defect based on expert examination of the product, a plaintiff may make a circumstantial prima facie case that the product was defective by showing (1) a malfunction and (2) evidence eliminating abnormal use or reasonable secondary causes for the malfunction." *Baylis*, 2005 WL 3309613, at *3 (citations and internal quotation marks omitted).

Holding plaintiff's to their considerable burden, courts repeatedly held that simply showing an accident occurred is insufficient to establish liability. *See DiIenno v. Libbey Glass Div.*, 668 F. Supp. 373 (D. Del. 1987) (finding expert's opinion that the jar had to have been defective to shatter the way it did was insufficient to show a defect and simply showing the accident occurred did not show a manufacturing defect); *Fatovic v. Chrysler Corp.*, C.A. No. 00C-08-299 HLA, 2003 WL 21481012 (Del. Super.) (attached hereto as Ex. 2); *Joseph v. Jamesway Corp.*, C.A. No. 93C-12-182 JOH, 1997 WL 524126 (Del. Super.) (attached hereto as Ex 3) (holding that merely showing that the bicycle at issue had broken was insufficient to show that it was defective and that plaintiff's use of circumstantial evidence did not show that negligence was the only possible inference).

Here, plaintiff's conclusion that the trailer hitch was defective is not supported by scientific tests or data and rests solely on the assumption that the trailer must have been defective because an accident occurred. While Mayfield's testimony, if believed, may provide a basis for alleging a "malfunction" of the coupler mechanism, Plaintiff cannot produce any evidence that eliminates "abnormal use or reasonable secondary causes for the malfunction." Indeed, plaintiff's now dismissed expert admitted that it was possible that Mr. Mayfield simply failed to attach the coupler mechanism properly, that he failed to attach the safety chains properly and that he failed to get the mechanism repaired or the trailer replaced before proceeding on his journey. All of these "secondary causes" have not been and cannot be eliminated by plaintiff.

Absent expert testimony, plaintiff cannot establish strict liability, breach of warranty or negligence against U-Haul in this case. Plaintiff's conclusion that the trailer hitch was defective is not supported by scientific tests or data and rests only on the assumption that the trailer must have been defective because an accident occurred. Plaintiff also has insufficient evidence to negate other reasonable causes of the accident, thus failing to show that U-Haul's negligence or conduct is the "only possible inference". As such, plaintiff's claims against U-Haul must be dismissed.

With respect to the doctrine of strict liability, U-Haul would note that plaintiff's reliance on *Martin v. Ryder Truck Rental, Inc.*, 353 A.2d 581 (Del. 1976) is misplaced. Plaintiff argues that strict liability in connection with lease transactions has been the law of Delaware since the decision of *Martin v. Ryder Truck Rental*. The issue raised in *Martin* was whether Article 2 of the UCC, as adopted by Delaware, preempted the doctrine of strict liability in the context of a lease/bailment



The Honorable Gregory M. Sleet
February 23, 2007
Page 3

transaction. The *Martin* Court ultimately concluded that the warranty provisions of Article 2 of the UCC did not extend to leases of goods barring strict liability claims. *Id.* at 584. Following the *Martin* decision, however, Delaware's legislature adopted Article 2A of the UCC and, in so doing, preempted the common law doctrine of strict liability for lease transactions.

Although *Martin* has not yet been expressly overruled, several Delaware trial court decisions have called its continued application into doubt as a result of Delaware's 1992 adoption of Article 2A of the UCC. *See Beatti v. Beatti*, 786 A.2d 549, 554 (Del. Super. 2001); *Golt v. Sports Complex, Inc.*, 644 A.2d 989, 991 (Del. Super. 1994); *Heronemus v. Ulrick*, C.A. No. 97C-03-168 HOH, 1997 WL 524127, *4 (Del. Super.) (attached hereto as Ex. 4). In each such instance, the courts were able to address the matter at hand without squarely resolving the impact of Article 2A on *Martin*. *See, e.g., Beatti*, 786 A.2d at 554 n. 18 (recognizing the issue of whether strict liability is preempted in the lease context by the adoption of Article 2A but not addressing it since the action predated the adoption of Article 2A).

The only court to squarely address the impact of Article 2A on the holding in *Martin*, was the United States District Court for the District of New Jersey. In its 1995 decision, the court concluded that the Delaware Supreme Court would likely rule that Article 2A <u>would</u> preempt the common law doctrine of strict liability in lease transactions. *See Ciafrani v. Kalmar-AC Handling Systems, Inc.*, No. 93-5640 (JEI), 1995 U.S. Dist. LEXIS 13730, *23 (D. NJ Sept. 11, 1995) (attached hereto as Ex. 5). The *Ciafrani* court held that:

> While no Delaware court has squarely addressed this issue, at least one court has recognized the possibility that Article 2A might preempt strict liability claims in lease transactions. *See Golt by Golt v. Sports Complex, Inc.*, 644 A.2d 989, 991 n.1 (Del. Super. 1994) (declining to address whether Article 2A preempted strict liability for leased goods because the statute was not enacted until after the accident occurred), appeal refused, 647 A.2d 382 (Del. 1994). However, Article 2A contains implied warranty provisions identical in substance to those in Article 2, compare 6 Del. C. §§ 2-314 and 2-315 with 6 Del. C. §§ 2A-212 and 2A-213, and the Cline court found the Article 2 provisions adequate to preempt a strict products liability action in a sales transaction. 418 A.2d at 974-80. The Court therefore concludes that Delaware courts would hold that Article 2A preempts a strict liability claim arising out of an injury caused by a leased good, and Eastern's motion for summary judgment on this claim will be granted.

*Id.* at *23.

The holding in *Ciafrani* is logical and consistent with the rationale that has been adopted by the Delaware Supreme Court in *Martin* and its progeny. Thus, this Court has an adequate basis to find that



The Honorable Gregory M. Sleet
February 23, 2007
Page 4

plaintiff strict liability claim in this case is preempted by Article 2A of the UCC. Of course, this is only an alternate argument in light of the initial discussion of this section.

Question 2: Is Nationwide bound by Mayfield's default?

Nationwide's policy provides that it will "pay damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury sustained by you or a relative, and because of property damage." (Applicable Pages of Nationwide Policy at 1, attached hereto as Ex. A). This obligation is reinforced under Delaware law (18 Del. Code § 3902), and Nationwide cannot escape that obligation by arguing it is not bound by Mayfield's default.

In *Sutch v. State Farm Mutual Automobile Insurance Co.*, an automobile accident resulted in plaintiff receiving an award at arbitration for $100,000 against a third-party tortfeasor, Jean Dale. 672 A.2d 17 (Del. 1996). Dale's insurance carrier paid the policy limit, which was $50,000. Sutch's uninsured motor vehicle insurance carrier (State Farm) was not a party to the arbitration and did not pay any benefits. Sutch subsequently filed suit against State Farm to recover the remainder of the judgment. The lower court held that the judgment against Dale was not binding on State Farm and that determination was appealed. *See id.* The question posed on appeal was "whether State Farm is obligated to make underinsurance coverage payments to Sutch, pursuant to the judgment entered in the Superior Court against the tortfeasor; or whether State Farm can re-litigate the underlying issues of liability and damages." *Id.* at 18.

The Supreme Court of Delaware noted that this was an issue of first impression and that it had not yet addressed the issue of the binding effect of a judgment that has been rendered against an uninsured or underinsured motorist "*vis-à-vis* a prevailing tort plaintiff's uninsured/underinsured motor vehicle insurance carrier." *Id.* at 21. The Delaware Court examined how other courts had resolved this issue and ultimately adopted the holding and rationale applied in *Champion Insurance Co. v. Denney*, 555 So.2d 137, 139 (1989).

In *Champion*, the issue was whether a default judgment obtained by an insured against an uninsured motorist would be "conclusive as to liability and as to damages" as against the uninsured carrier even though the insured failed to get the carrier's consent to sue the uninsured motorist. *Champion*, 555 So.2d at 137. The court in *Champion* found that the insurer was bound by the default judgment, even though no consent to sue was given, because the insurer had information about the action and received a copy of the summons and complaint (as well as a letter accompanying those papers that indicated it might want to respond to the complaint). *Id.* The court also noted that the purpose of the consent to sue clause is to prevent collusion between an insured and an uninsured motorist - a purpose which is served once the insurer is placed on notice of the action and given the opportunity to intervene. *Id.* at 139. The court in *Sutch* found Appleman's treatise on insurance to be instructive and quoted the following passage: "A judgment rendered against the uninsured motorist may be conclusive against the uninsured motorist insurer, particularly where *it has been joined as a*



The Honorable Gregory M. Sleet
February 23, 2007
Page 5

*party, or has notice of the proceedings, or a right to defend, or intervene, which has elected not to do so."* Sutch v. State Farm, 672 A.2d at 21 (citing 8C Appleman, Insurance Law & Practice § 5089.75, at 372-73 (1981 and 1994 Supp.)).

In the end, the *Sutch* court concluded that State Farm received notice of the arbitrator's decision more than a month before the judgment was entered in the Superior Court and had ample time to intervene to protect its interests once it became aware of the demand for underinsurance benefits. Thus, the court found that, under collateral estoppel, the judgment was binding upon State Farm. Likewise, Nationwide had ample notice of the lawsuit (including being added as a party) and had sufficient opportunity to protect its interests. Nationwide could have filed an answer on behalf of Mayfield or asked that this court refrain from entering a default while Nationwide sought to obtain Mayfield's appearance in this action. Either step would have precluded the default from being entered. It cannot now, at this late juncture, argue that it should not be bound by a judgment that it could have easily prevented.

Finally, Nationwide will also likely point to its "consent" provision in its policy to support its argument that is it not bound by Mayfield's default, *i.e.*, "Any judgment against the uninsured (including underinsured) will be binding on us only if it has our written consent." (*See* Ex. A at 2). This provision does not apply in this case. The court in *Sutch* found that consent was not given because the insured did not notify the insurer of the lawsuit until after the arbitrator's decision was rendered; however, the court found that this was not fatal to the insured's claim because the insurer was required to show that it suffered some prejudice by the insured failing to comply with the notice (and consent) requirements. *Sutch*, 672 A.2d at 22. There was no prejudice shown where the insurer had ample time to intervene to protect its interest; thus, the consent provision did not prevent the insurer from being bound by the judgment. *Id.* The same would be true in this case as Nationwide had the opportunity to intervene and had notice of the suit, and it cannot show that its failure to consent to the judgment or any lack of notice in this case would be prejudicial in any way.

We would be happy to respond to further inquiries from the Court and would appreciate an opportunity to provide oral argument, possibly next week in anticipation of the trial. Thank you for your consideration.

Respectfully,

/s/ Steven L. Caponi

Steven L. Caponi
(DSBA # 3484)

SLC:jlb
cc:   Clerk of the Court
      Opposing Counsel

123128.00601/40167412v.1