IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SARA S. ECHEVARRIA, | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No. 05-284 (GMS) |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| U-HAUL INTERNATIONAL INC. ROGER MAYFIELD, and NATIONWIDE GENERAL INSURANCE COMPANY, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ROGER MAYFIELD'S OPENING BRIEF IN SUPPORT OF HIS
MOTION TO ALTER OR AMEND JUDGMENT**

FERRY, JOSEPH & PEARCE, P.A.

/s/Robert K. Pearce
ROBERT K. PEARCE, ESQ (ID # 191)
THOMAS R. RIGGS, ESQ (ID #4631)
824 Market Street, Suite 904
Wilmington, DE 19899
(302) 575-1555
rpearce@ferryjoseph.com
Attorneys for Defendant
Roger Mayfield.

Dated: April 5, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ............................ 1

SUMMARY OF ARGUMENT ................................................ 2

STATEMENT OF FACTS .................................................... 3

ARGUMENT ................................................................. 5

    I.     Mayfield is entitled to a set-off in the amount of $100,000.00
           in order to prevent manifest injustice. ............................ 5

CONCLUSION ............................................................... 9

# TABLE OF AUTHORITIES

**Cases:**

*Lankford v. Richter*, 1989 WL 12229(1989) ................................. 6

*Lomax v. Nationwide Mutual Insurance Company*, 964 F.2d 1343 (3rd Cir. 1992) .... 6,8

*North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194 (3rd.Cir. 1995). ........ 5

**Statutes:**

18 *Del.C.* §3902 ................................................. 6

**Secondary Sources:**

25 C.J.S. Damages §99 ............................................. 7

Restatement (Second) of Torts § 920A (1979) .............................. 6-7

## NATURE AND STAGE OF THE PROCEEDINGS

On March 16, 2005, Plaintiff Sara S. Echevarria ("Plaintiff") filed a Complaint in the Superior Court of Delaware in and for New Castle County seeking damages for personal injuries she allegedly suffered in an automobile accident on or about May 15, 2004. On May 10, 2005, Defendant U-Haul International petitioned to have the case removed to this Court. Plaintiff moved for default judgment against Defendant Roger L. Mayfield ("Mayfield") on August 15, 2005, and a default was entered against Mayfield on October 5, 2005. On November 22, 2006, Mayfield filed a motion to vacate the default, which was denied on or about February 9, 2007. A jury trial in this matter commenced on March 5, 2005, and on March 9, 2007, the jury entered a verdict in favor of Plaintiff, and against Mayfield, in the amount of $125,000.00. The jury also found in favor of Defendant U-Haul Company of Florida. On or about March 20, 2007, Plaintiff and Defendant Nationwide General Insurance Company ("Nationwide") filed a stipulation of dismissal by which Plaintiff agreed to dismiss with prejudice all claims against Nationwide, and Plaintiff filed a motion for default judgment against Mayfield. On March 23, 2007, the Court entered judgment against Mayfield in the amount of $125,000. This is Mayfield's Motion to Alter or Amend the Judgment Pursuant to Federal Rule of Civil Procedure 59(e).

## **SUMMARY OF ARGUMENT**

I.  Defendant Roger Mayfield is entitled to a set-off in the amount of $100,000.00 in order to prevent manifest injustice.

## STATEMENT OF FACTS

On May 15, 2004, a car driven by Plaintiff Sara S. Echevarria collided with a U-Haul trailer being towed by defendant Roger Mayfield ("Mayfield"). At the time, Mayfield was covered by an insurance policy issued by Republic Western that provided $15,000.00 in liability coverage. *See* D.I. 70, *Joint Proposed Final Pretrial Order*, p.4. The Plaintiff's automobile insurance carrier, Nationwide, provided a maximum of $100,000.00 in underinsured motorist coverage. *See* D.I. 70, *Joint Proposed Final Pretrial Order*, p.4. Plaintiff moved for default judgment against Mayfield on or about August 15, 2005, and a default was entered against Mayfield on or about October 5, 2005. D.I. 16; D.I 20. On November 22, 2006, Mayfield filed a motion to vacate the default, which was denied on February 9, 2007. D.I. 61; D.I. 78. On February 27, 2007, the Court entered an Order that Mayfield could not participate in the trial scheduled to begin on March 5, 2007, and that there would be a post-trial hearing to apportion any damages awarded by the jury. D.I. 87. At the conclusion of the trial, the jury found for the plaintiff, and against Mayfield, and awarded plaintiff $125,000 in damages. D.I. 96. On information and belief, after the jury verdict, but prior to the entry of judgment, the plaintiff and Nationwide entered into a settlement agreement for less than Nationwide's underinsured policy limits, and the plaintiff agreed to dismiss all claims against Nationwide. *See Letter from Robert K. Pearce to Roger D. Landon*, dated March 21, 2007, attached hereto as Exhibit A; *Letter from Roger D. Landon to Robert K. Pearce* dated March 22, 2007, attached hereto as Exhibit B. Plaintiff then moved for default

3

judgment in the amount of $125,000 against Mayfield; no judgment was sought against Nationwide. D.I. 102. On March 23, 2007, the Court entered judgment against Mayfield in the amount of $125,000.

## ARGUMENT

**1.    Standard**

A proper motion to alter or amend judgment must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct clear error [of law] or prevent manifest injustice. *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3rd.Cir. 1995).

**2.    Mayfield is entitled to a set-off in the amount of $100,000.00 in order to prevent manifest injustice.**

At trial, the jury found that Mayfield was 100 percent responsible for damages sustained by the plaintiff, and set the amount of damages at $125,000.00. Mayfield's insurance coverage was limited to $15,000, but Plaintiff's automobile policy, issued by Nationwide, provided for $100,000 in uninsured/underinsured motorist ("UM/UIM") benefits. The policy provides, in relevant part: [Nationwide] will pay damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative, and because of property damage." *See* Nationwide Policy, attached as Exhibit C, p. U1. The policy specifically includes underinsured motorists within the definition of an uninsured motorist. *See* Exhibit C, p.U2. Since the jury found Mayfield to be 100 percent at fault, and Mayfield was, by definition, underinsured, Nationwide was obligated to pay the plaintiff $100,000 pursuant to the aforementioned uninsured motorist provision. As will

5

be discussed more fully herein, Mayfield is entitled to a set-off in the amount of $100,000. It is expected that the plaintiff will argue that the collateral source rule applies to the instant facts, and Mayfield should not receive a credit for the amount owed by Nationwide since he and Nationwide are not joint tortfeasors. However, a close examination of the purposes behind uninsured/underinsured motorist benefits, and the collateral source rule, weigh heavily in favor of Mayfield being entitled to such an off-set, and a ruling otherwise would create a manifest injustice.

It has been held that Delaware's uninsured and underinsured motorist statute, 18 *Del.C.* §3902 ("UM/UIM statute"), was intended "to place the insured in the same position he or she would have been in if the tortfeasor had carried the same liability coverage which the insured carried, up to the maximum amount permitted by statute. *Lomax v. Nationwide Mutual Insurance Company*, 964 F.2d 1343, 1346 (3rd Cir. 1992). Essentially, the uninsured/underinsured motorist carrier (the "UM/UIM carrier") "steps into the shoes" of the uninsured/underinsured tortfeasor. *Lankford v. Richter*, 1989 WL 12229, at *2 (1989), *aff'd in part, rev'd in part on other grounds*, 570 A.2d 1148 (Del.1990)(attached as Exhibit D). Thus, the UM/UIM carrier's liability is wholly dependent upon whether the uninsured/underinsured defendant is found to be responsible for the plaintiff's injuries.

It is under this context that the collateral source rule should be analyzed. The Restatement (Second) of Torts § 920A (1979) describes the collateral source rule as follows:

> (1) A payment made by a tortfeasor *or by a person acting for him* to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability."
> (2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or part of the harm for which the tortfeasor is liable.(emphasis added).

This rule has also been explained in the following manner: "The wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, *wholly independent of him*." 25 C.J.S. Damages §99 (emphasis added).

In other words, the collateral source rule only applies when payment is made to an injured party for reasons wholly unrelated to the actions of the tortfeasor. In the case at hand, Nationwide is responsible to pay its UIM policy limits only because Mayfield was found to have been negligent. Nationwide is in effect acting for Mayfield; rather than being "wholly independent" of him, Nationwide has stepped into Mayfield's shoes and is only liable because of Mayfield's actions. Accordingly, any payment owed by Nationwide pursuant to the UIM policy should not be considered as a collateral source, and Mayfield should be entitled to a set-off in that amount.

A contrary result would permit a double recovery by Plaintiff, which is not contemplated by Delaware's UM/UIM statute, and would be manifestly unjust. As mentioned, *supra*, the purpose of the UM/UIM statute is to place the insured in the same position he or she would have been in if the tortfeasor had carried the same liability coverage which the insured carried, up to the maximum amount permitted by statute. The

7

purpose of the UM/UIM statute is *not* to permit a plaintiff to collect the windfall of a double recovery. As applied to this case, had Mayfield been fully insured, the plaintiff would have recovered $125,000.00 from Mayfield's insurer, and nothing more. Since Mayfield was only insured for $15,000, and was thus underinsured, the UM/UIM statute's purpose is to put the plaintiff into the same position she would have been had Mayfield indeed been fully insured; thus, Nationwide is required to pay the full amount of its policy limits, or $100,000, which puts the plaintiff close to the position she would have been in had Mayfield been fully insured. Of course, Mayfield may still be personally liable for the remaining $10,000, after his insurance paid its $15,000 limits. However, if Mayfield is not granted the off-set of Nationwide's $100,000 responsibility, the plaintiff will be able to collect up to $100,000 from Nationwide, $15,000 from Mayfield's insurer, and still recover $110,000 from Mayfield personally. Such a result is clearly not what Delaware's legislature intended in passing the UM/UIM statute. Moreover, Nationwide has collected full premiums from Plaintiff for her UM/UIM coverage. Allowing Nationwide to settle this case for less than what it is contractually obligated to pay as a result of the jury verdict amounts to a windfall for Nationwide, and would be manifestly unjust.

While there is some case law in the Third Circuit tending to indicate that UM payments are subject to the collateral source rule, no decisions are exactly on point. For example, in *Lomax v. Nationwide Mutual Insurance Company*, 964 F.2d 1343 (3rd. Cir. 1992), the Court held that the collateral source rule applied to UM benefits insofar as an

8

insured's recovery of benefits from another source, specifically, from a medical insurance provider, would not preclude the insured's recovery of benefits from its UM/UIM carrier. However, *Lomax* says nothing about whether the underinsured tortfeasor is entitled to a set-off in the amount paid by the UM/UIM carrier in circumstances similar to the instant case. Unlike in *Lomax*, the plaintiff in the case at bar chose to sue her UM/UIM carrier, proceeded to trial, obtained a jury verdict by which her UM/UIM carrier was obligated to pay its underinsured motorist policy limits, and then settled with her UM/UIM carrier prior to the entry of judgment and dismissed her claims against it solely for the purpose of collecting more than the amount awarded to her by the jury. The end result of this maneuvering, if allowed, is that Plaintiff will collect substantially more than the amount of her damages as determined by a jury, and Nationwide will escape from this case without paying the limits of its policy as was contemplated by the UM/UIM policy and Delaware's UM/UIM statute. As discussed herein, public policy weighs heavily in favor of Mayfield receiving a set-off in the amount of Nationwide's UIM policy limits so as to prevent plaintiff and Nationwide from receiving an unwarranted windfall.

## CONCLUSION

For the foregoing reasons, Defendant Roger Mayfield respectfully requests that the judgment entered against him be altered or amended to reflect a $100,000 set-off for Nationwide's contribution to Plaintiff's damage award.

9

                                    FERRY, JOSEPH & PEARCE, P.A.

                                    /s/Robert K. Pearce
                                    ROBERT K. PEARCE, ESQ (ID # 191)
                                    THOMAS R. RIGGS, ESQ (ID #4631)
                                    824 Market Street, Suite 904
                                    Wilmington, DE 19899
                                    (302) 575-1555
                                    rpearce@ferryjoseph.com
                                    Attorneys for Defendant
                                    Roger Mayfield.

Dated: April 5, 2007