IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SARA S. ECHEVARRIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-284 (GMS) |
| v. ) | |
| ) | |
| U-HAUL CO. OF FLORIDA, ) | |
| ROGER MAYFIELD, and NATIONWIDE ) | |
| GENERAL INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**I.   INTRODUCTION**

On May 15, 2004, plaintiff Sara S. Echevarria's ("Echevarria") car collided with a U-Haul trailer that was towed by Roger Mayfield ("Mayfield"). (D.I. 106 at 3.) Echevarria was injured as a result of the accident and sought recovery from U-Haul, Mayfield, and her automobile insurance provider, Nationwide General Insurance Co. ("Nationwide"). (Id. at 1.) At the time of the accident, Mayfield was covered by an insurance policy issued by Republic Western that provided $15,000 in liability coverage. (Id. at 3.) That is, Mayfield was underinsured. Echevarria's policy with Nationwide provided a maximum of $100,000 in underinsured motorist ("UIM") coverage. (Id.) Echevarria filed this action on March 16, 2005 in the Superior Court of Delaware. (Id. at 1.) U-Haul subsequently removed the case to this court. On August 15, 2005, Echevarria moved for default judgment against Mayfield, and the clerk's office entered default on October 5, 2005. (D.I. 20.) On November 22, 2006, Mayfield moved to vacate the default, which the court denied on February 9, 2007. (D.I. 78.) On February 27, 2007, the court issued an Order (D.I. 89) in which it determined that Mayfield could not participate in the trial, because he was in default. The Order also stated that, to the extent necessary, the court would conduct a post-trial hearing to apportion any

damages awarded by the jury, should it return a verdict finding both Mayfield and U-Haul liable. (Id. at 2.)

At trial, the jury found Mayfield to be 100 percent liable for the accident and awarded Echevarria $125,000 in damages. (D.I. 96.) After the verdict, but before the entry of judgment, Nationwide and Echevarria settled for an undisclosed amount, and Echevarria dismissed all claims under her UIM policy against Nationwide. (D.I. 101.) Echevarria then filed a motion for default judgment in the amount of $125,000 against Mayfield, which the court granted on March 23, 2007. (See D.I. 102, 104.) Presently before the court is Mayfield's motion to alter or amend the judgment, (D.I. 105), pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court will deny Mayfield's motion.

## II.   DISCUSSION

Federal Rule of Civil Procedure 59 permits the filing of a motion to alter or amend a judgment. *See* Fed. R. Civ. P. 59(e). The standard for obtaining relief under Rule 59(e) is difficult to meet. *Samuel v. Carroll*, 505 F. Supp. 2d 256, 261 (D. Del. 2007). The purpose of such a motion is to correct manifest errors of law or fact, or to present newly discovered evidence. *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A court may alter or amend a judgment if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

A motion to alter or amend judgment may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles*

*USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1993). Altering or amending a judgment may be appropriate, however, where "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Id*. at 1241 (citations omitted). With these standards in mind, the court turns to Mayfield's motion.

Mayfield claims that he is entitled to have the $125,000 judgment against him offset by $100,000 (the amount of Echevarria's UIM coverage provided by Nationwide) to prevent manifest injustice. (D.I. 106 at 6.) Delaware's UIM statute, Del. Code Ann. tit. 18, § 3902 (2007), provides that a motorist is underinsured if "the limits of bodily injury liability coverage under all bonds and insurance policies applicable at the time of the accident total less than the limits provided by the uninsured motorist coverage . . . [as] stated in the declaration sheet of the policy." § 3902(b)(2); *Colonial Ins. Co. of Wisconsin v. Ayers*, 772 A.2d 177, 180 (Del. 2001). In this case, there is no dispute that Mayfield meets the definition of an underinsured motorist.

Mayfield argues, however, that Nationwide is obligated to pay the $100,000 policy limit to Echevarria, because he was an underinsured motorist at the time of the accident, Echevarria has UIM coverage from Nationwide, and the jury found him 100 percent at fault for the accident. (D.I. 106 at 5.) Thus, the crux of Mayfield's argument is that he is entitled to have the judgment offset, because Echevarria should have collected her UIM benefits from Nationwide. In other words, Mayfield contends that Echevarria will recover twice if the court permits the judgment to stand. (Id. at 7.) In support of this argument, Mayfield states that the UIM statute was intended "to place the insured in the same position he or she would have been in if the tortfeasor had carried the same liability coverage which the insured carried." (Id. at 6) (quoting *Lomax v. Nationwide Mut. Ins. Co.*,

3

964 F.2d 1343, 1346 (3d Cir. 1992)). Mayfield claims that Nationwide, as the UIM carrier, essentially steps into his shoes as the underinsured tortfeasor. (Id. at 7) (citing *Lankford v. Richter*, No. C.A.85C-OC40, 1989 WL 12229, at *2 (Del. Super. Ct. Jan. 27, 1989)). Finally, Mayfield argues that it would be against public policy to permit a double recovery by the plaintiff. (Id.)

Conversely, Echevarria argues that the collateral source rule applies in this case. (D.I. 109 at 4.) The collateral source rule "denies a tortfeasor any right to offset monies received by the injured plaintiff from sources unconnected to the tortfeasor." *Lomax*, 964 F.2d at 1346. Echevarria claims that Mayfield has no connection to Nationwide, and that Nationwide is acting only for Echevarria by providing her the insurance benefits for which she contracted. (D.I. 109 at 6.) Anticipating this argument, Mayfield argues in his opening brief that the collateral source rule does not apply to this situation because, "Nationwide is responsible to pay its UIM policy limits only because Mayfield was found to have been negligent." (D.I. 106 at 7.) Mayfield concludes that Nationwide is acting for him and is, therefore, not "wholly independent" of him. (Id.)

The court is not persuaded by Mayfield's arguments for the following reasons. First, Nationwide does not "stand in the shoes" of Mayfield. Indeed, there is nothing in the record which indicates that Nationwide ever acted on Mayfield's behalf. Second, the relationship between Nationwide and Echevarria is contractual, and Nationwide's inclusion in the lawsuit was solely to determine whether it would have to pay Echevarria under her UIM policy.[1]

Echevarria cites the Delaware Supreme Court decision, *Saienni v. Anderson*, 669 A.2d 23 (Del. 1995), to support her position that Mayfield is not entitled to offset the judgment against him

---

[1] For example, if the jury returned a verdict against U-Haul, it is likely that Nationwide would not have had to pay Echevarria, because U-Haul's insurance would have compensated her.

by $100,000.$^2$  In *Saienni*, the plaintiffs were in an accident involving two defendants, Saienni and Oat. *Id.* at 24.  The jury apportioned fault between the defendants on the basis of 22 percent against Saienni and 78 percent against Oat. *Id.*  Because Oat was an uninsured motorist who did not appear at trial, Saienni became responsible for the entire judgment. *Id.*  Saienni filed a post-verdict motion for remittitur based on the payment to the plaintiffs by their UIM insurance carrier, State Farm Mutual Automobile Insurance Co. *Id.*  The payment was made before trial, but after an arbitration hearing and in recognition of Oat's lack of insurance and apparent fault. *Id.*  Saienni sought a credit in the amount of the plaintiffs' policy limit ($15,000) against the $60,500 judgment awarded at trial. *Id.*  Saienni argued that State Farm stood in the shoes of Oat and, thus, should be considered a joint tortfeasor. *Id.*  Saienni further argued that unless State Farm's payment was offset, the plaintiffs would receive a windfall. *Id.* at 25.  The Delaware Supreme Court was not persuaded by either argument, and denied Saienni's motion. *Id.*  In doing so, the court held that State Farm had a contractual agreement with the plaintiff and, therefore, could not be considered a joint tortfeasor. *Id.* at 24.  In addition, the court found that "the collateral source rule precludes a tortfeasor from taking advantage of State Farm's generosity."$^3$  *Id.* at 25.

The facts of the present case are strikingly similar to *Saienni*.  Mayfield attempts to distinguish the present case by pointing to the following facts: (1) Nationwide has been a party to the case since the complaint was filed (State Farm was not a party in *Saienni*); (2) Nationwide did

---

$^2$ Mayfield offers no support for his calculation of this figure.  He mentions that Echevarria's policy limit is $100,000, (D.I. 106 at 3), but Nationwide could have settled with Echevarria for any amount.

$^3$ It is noteworthy that the same attorney that represented Saienni now represents Mayfield and advances the same argument in the present case that the court squarely rejected in *Saienni*.

not settle Echevarria's claim until after trial (State Farm paid the plaintiffs before trial); and (3) Nationwide only settled the claim after the jury determined that it was obligated to pay the limits of its UIM coverage. (D.I. 110 at 3). The court is not persuaded and finds the timing of the UIM carrier's payment of no moment. In *Saienni*, State Farm paid the plaintiffs after an arbitration, and in recognition of the uninsured motorist's apparent fault. *Saienni*, 669 A.2d at 24. Here, Nationwide settled with Echevarria after the jury returned a verdict finding Mayfield 100 percent at fault. In other words, there was no reason for Nationwide to pay Echevarria before the jury verdict, because there was a possibility that the jury would return a verdict finding the presumably fully-insured U-Haul partially or fully liable. Moreover, Mayfield's argument that the jury determined Nationwide was obligated to pay the limits of its UIM coverage is simply wrong. The jury never made any finding as to Nationwide's liability. The jury's verdict was limited to whether U-Haul, Mayfield, or both were liable for the accident. (See D.I. 96.)

Finally, regarding Mayfield's argument that not granting an offset in the judgment would result in a windfall for Echevarria, the Delaware Supreme Court has stated that the purpose of Delaware's UIM statute is to protect innocent persons from the negligence of unknown or impecunious tortfeasors. *State Farm Mut. Auto. Ins. Co. v. Buckingham*, 919 A.2d 1111, 1114 (Del. 2007). In *Lomax*, the Third Circuit stated that the collateral source rule applies to UIM claims and recognized that, "[a]lthough application of the collateral source rule may result in a windfall to the insured, public policy favors this result because the insured is the innocent party." 964 F.2d at 1347 n.5 (citation omitted). Here, Mayfield should not be relieved of any responsibility to pay, because he was deemed 100 percent at fault. Public policy does not permit a burden to be lifted off of a tortfeasor solely because the innocent party had the foresight to insure herself.

**III.    CONCLUSION**[4]

For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. Mayfield's Motion to Alter Judgment or Amend Judgment (D.I. 105) is DENIED.


Dated: January 25, 2008                              /s/ Gregory M. Sleet
                                                                    CHIEF, UNITED STATES DISTRICT JUDGE

---

[4] An interesting issue not raised by the parties and, therefore, not discussed by the court, is whether Mayfield and his "lawyer," Robert K. Pearce, Esq. ("Mr. Pearce"), ever formed an attorney-client relationship. Rule 1.4 of the Delaware Lawyers' Rules of Professional Conduct (2007) requires that a lawyer shall "reasonably consult with the client about means by which the client's objectives are to be accomplished." Paragraph 17 of the Scope of the Rules of Professional Conduct states that "principles of substantive law external to [the] Rules determine whether a client-lawyer relationship exists." Whether an attorney-client relationship exists depends upon the facts and circumstances in a particular case. *In re Berl*, 540 A.2d 410, 414 (Del. 1988); *see Milner v. Anders*, No. Civ. 98-377 GMS, 2001 WL 637394, at * 4 (D. Del. May 10, 2001). An attorney-client relationship can either be express or implied. *Milner*, 2001 WL 637394, at *4-6. Factors in determining whether a relationship exists include: the client's consultation with attorney, the consulting party's interest or request to seek legal advice, the attorney's giving of or promise to give legal advice, the making of an express contract, the consulting party's perception of the attorney as his counsel, etc. *See generally* 48 Am. Jur. 2d Proof of Facts § 525. Here, during the pretrial conference, Mr. Pearce stated that he "has never spoken to Mr. Mayfield." (Transcript of February 13, 2007 pretrial conference at 60:7-9.) Considering all the facts and circumstances of this case, it appears as though an attorney-client relationship does not exist between Mayfield and Mr. Pearce. However, since neither party raised the issue, and a decision on it is not essential to the court's holding, there is no need for the court to further address it.